IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION

| | |
|---|---|
| AMERICAN ASSOCIATION OF COLLEGES FOR TEACHER EDUCATION, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>LINDA MCMAHON,<br>AS SECRETARY OF EDUCATION, *et al.*,<br><br>*Defendants*. | Civil Action No. 1:25-cv-00702-JRR |

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR A TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

I. INTRODUCTION...........................................................................................................1

II. ARGUMENT.................................................................................................................1

    A.    Venue is Proper in The State of Maryland.................................................1

    B.    MACTE has Established Standing..............................................................4

    C.    Plaintiffs Are Likely To Succeed On The Merits. .......................................7

        1. This Court's NADOHE Order Applies to Plaintiffs in this Action and the Department should be Enjoined from Enforcing the Termination of the TQP, SEED, and TSL Grants........................................................................................................ 7

        2. The Department's Termination of the TQP, SEED, and TSL Grants Violates the Administrative Procedures Act. ......................................................................... 9

    D.    Government's Argument with Respect to the Scope of Relief.................13

    E.    Plaintiffs' Request for Removing the Route Pay Condition is Clear.........14

III. CONCLUSION ............................................................................................................14

# **TABLE OF AUTHORITIES**

**FEDERAL CASES**

*A.J. Taft Coal Co. v. Barnhart*, 291 F. Supp. 2d 1290 (N.D. Ala. 2003) ........................................2

*Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183 (4th Cir. 2018)...................................................4

*FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024) .................................................................4

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ..............................................................5, 6

*Lane v. Holder*, 703 F.3d 668 (4th Cir. 2012) .................................................................................5

*Manning v. Caldwell for City of Roanoke*, 930 F.3d 264 (4th Cir. 2019) .......................................8

*Nat'l Assoc. of Diversity Officers in Higher Ed., et al. v. Donald J. Trump, et al.*,
   No. 1:25-CV-00333-ABA, 2025 WL 573764 (D. Md. Feb. 21, 2025) ..............................5, 6, 7

*People for Ethical Treatment of Animals, Inc. v. Tri-State Zoological Park of W. Md., Inc.*,
   843 F. App'x 493 (4th Cir. 2021) ...............................................................................................5

*Republican Nat'l Comm. v. North Carolina State Board of Elections*, 120 F.4th 390
   (4th Cir. 2024)............................................................................................................................5

*S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*,
   713 F.3d 175 (4th Cir. 2013) ..................................................................................................5, 6

*Sidney Coal Co. v. Soc. Sec. Admin.*, 427 F.3d 336 (6th Cir. 2005)................................................2

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ..................................................................................4

**FEDERAL STATUTES**

2 C.F.R. § 200.340 ...............................................................................................9, 10, 11, 12

20 U.S.C. § 1232................................................................................................................10, 11

28 U.S.C. § 1391..............................................................................................................................2

U.S. Const. Amendment V ..............................................................................................................1

**I.      INTRODUCTION**

Plaintiffs have demonstrated that they are likely to succeed on the merits of their claims and that an injunction is both in the public interest and in the interest of the equities at play here. The Government does not dispute that in the absence of an injunction, Plaintiffs will suffer irreparable harm. ECF No. 24 ("Def. Br.") at 13. The Government also does not dispute that the termination of the TQP, SEED, and TSL grants constituted final agency action, or that the terminations, if undertaken today, would violate the NADOHE order. *See generally* Def. Br.

As a result, the remaining live issues are: (1) whether Plaintiffs are properly before this Court; (2) whether continued enforcement of terminations that would be unlawful if taken today is permissible because it preceded a court order; and (3) whether "agency Priorities" as used in Section 200.340(a)(4) provides for essentially limitless discretion in terminating grants, as the Government argues. As shown below, Plaintiffs have established both standing and venue in this action; the Department's continued enforcement of the terminations violates the Fifth Amendment to the Constitution via the NADOHE order; and the Government's interpretation of "agency priorities" is completely unsupported by the text and a common-sense read of the law at issue. The Court should enter a preliminary injunction ordering the Department to vacate the grant terminations for Plaintiffs and their members on both Fifth Amendment and APA grounds.

**II.     ARGUMENT**

    **A.      Venue is Proper in The State of Maryland.**

Plaintiffs have invoked venue pursuant to § 1391(b)(2) and (e)(1), ECF No. 1 at ¶ 11, and venue is proper in this District under both provisions. Section 1391(e) establishes venue in this district because Plaintiff MACTE resides in this District, a proposition the Government neither challenges nor addresses in its brief. This is really the end of the inquiry, but since the Government challenges venue under (b)(2) as well, Plaintiffs will address it as well.

1

Where, as here, a defendant is an officer or employee of the United States acting in her official capacity (Defendant McMahon), or an agency of the United States (Defendant Department of Education), the action may be brought in a judicial district where "the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1)(C). Federal courts applying this venue provision have concluded that only a single plaintiff need reside in the district to establish venue. *See A.J. Taft Coal Co. v. Barnhart*, 291 F. Supp. 2d 1290, 1301 (N.D. Ala. 2003) (collecting cases and remarking that "[f]or over thirty years federal courts have conclusively and consistently held that the statutory language in 28 U.S.C. § 1391(e)(3)[1] regarding the residency of 'the plaintiff' should be interpreted to mean ***any*** plaintiff rather than ***all*** plaintiffs.") (emphasis in original); *see also id.* at 1302 ("This court concludes that under 28 U.S.C. § 1391(e)(3), a suit can be brought in any district in which a single plaintiff resides."); *Sidney Coal Co. v. Soc. Sec. Admin.*, 427 F.3d 336, 345-46 (6th Cir. 2005) ("[T]he case law and legislative history compel this Court to hold that the residency requirement of 28 U.S.C. § 1391(e)(3) is satisfied if at least one plaintiff resides in the district in which the action has been brought."). This action names as defendants an executive branch official sued in her official capacity and an agency of the United States. ECF No. 1 at ¶ 15-16. MACTE is a resident of Maryland with its principal place of business located at 304 Hawkins Hall, Towson University, Towson, Maryland 21252. ECF No. 1 at ¶ 14. Venue is, therefore, plainly proper pursuant to § 1391(e)(1)(C).

And as noted, although Plaintiffs need not satisfy two different bases for venue, they do. Venue is also proper in this District because a substantial part of the events giving rise to the claim occurred in Maryland. As a threshold matter, MACTE is a member organization—not a "Maryland

---

[1] 28 U.S.C. § 1391(e) was restyled in 2011 to remove the numeric list—e.g., (1), (2), (3)—and insert the letters (A), (B), and (C).

2

chapter" of a national organization. ECF No. 1 at ¶ 14 (describing MACTE as "membership organization" that includes "regionally accredited colleges and universities engaged in the preparation of professional school personnel with state program approval"); ECF No. 24 at 15.

More specifically, three of MACTE's member organizations—Towson University, the University of Maryland, and Frostburg State University—suffered termination of SEED and/or TQP grants. Supplemental Declaration of Laurie Mullen ("Supp. Mullen Decl.") at ¶ 4. Towson University's TQP grant was terminated in February 2025 by the Department. The TQP grant was approved on September 4, 2024, for a period of one year (October 1, 2024 to September 30, 2025), in the amount of $849,659. Future budget periods were outlined as follows: budget period 2 (10/1/2025-9/30/2026) - $811,249; budget period 3 (10/1/2026-9/30/2027) - $1,099,920; budget period 4 (10/1/2027-9/30/2028) - $1,240,123; budget period 5 (10/1/2028-9/30/2029) - $1,152,933. Supp. Mullen Decl. at ¶ 6. The University of Maryland's SEED grant was terminated in February 2025 by the Department. The terminated SEED grant was approved to begin on October 1, 2022, for a period of three years, in the amount of $4,808,683. Supp. Mullen Decl. at ¶ 7. Frostburg State University's TQP grant was also terminated in February 2025. Supp. Mullen Decl. at ¶ 8.

The Government represents that the grant terminations described in the Complaint "occurred in eight states but not in Maryland," ECF No. 24 at 13, a perplexing assertion not just because the Plaintiffs attached a declaration to their motion making clear that Maryland programs were impacted by the grant termination (ECF No. 5-5 (stating the grant terminations "result[ed] in a substantial loss of funds for teacher preparation programs in Maryland")), but because the Government cites, and is thus presumably familiar with, litigation proceeding as *California v. U.S. Dep't of Educ.*, 1:25-cv-10548-MJJ, in the District of Massachusetts. ECF No. 24 at 11-12, 17

(recognizing that "Maryland grants were terminated"), in which multiple declarations and the Court's opinion entering a TRO confirmed that Maryland-based grants were terminated. Specifically, the Department terminated MACTE member Towson University's TQP grant funding, which effectively terminated Towson's Preparing and Retaining Inclusive Maryland Educators ("PRIME") project. A true and accurate copy of the Towson declaration filed in that case is attached as Exhibit A to the Declaration of Joshua W.B. Richards ("Richards Decl."). Another declaration in that case detailed resultant harm of SEED grant termination in Maryland for another MACTE member, the University of Maryland. *California v. U.S. Dep't of Educ.*, 1:25-cv-10548-MJJ, ECF No. 8-15. A true and accurate copy of that declaration is attached as Exhibit B to the Richards Declaration. Not only that, but it is a matter of public record, of which this Court may take judicial notice, that Maryland grants were awarded, including those to Towson, Frostburg State, and the University of Maryland: https://www.ed.gov/grants-and-programs/teacher-prep/teacher-quality-partnership-program#awards, https://www.ed.gov/grants-and-programs/teacher-prep/supporting-effective-educator-development-grant-program#awards; It is also not in matter of reasonable dispute that the Government has terminated all teaching grants. *See* Richards Decl. Ex. C. Accordingly, a substantial portion of events took place in Maryland and venue in this District is proper pursuant to § 1391(b)(2) as well.

   B.   **MACTE has Established Standing.**

To demonstrate standing, a plaintiff must show "(i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024); *Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 187 (4th Cir. 2018). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent,

not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (cleaned up).

An organization can establish standing in one of two ways: either "in its own right to seek judicial relief for injury to itself," or "as a representative of its members who have been harmed." *People for Ethical Treatment of Animals, Inc. v. Tri-State Zoological Park of W. Md., Inc.*, 843 F. App'x 493, 495 (4th Cir. 2021) (citation omitted). An organization must only "make specific allegations establishing that at least one identified member had suffered or would suffer harm." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) (emphasis omitted) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009)); *see also Nat'l Assoc. of Diversity Officers in Higher Ed., et al. v. Donald J. Trump, et al.*, No. 1:25-CV-00333-ABA, 2025 WL 573764, at *9 (D. Md. Feb. 21, 2025) ("When an organization is alleging harm, it may establish standing based on its own injury or based on its members' injuries, the latter of which is called representational or associational standing.") (citing *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023)).

Moreover, "[a]n organization may have standing to sue on its own behalf for injuries it sustains as a result of a defendant's actions." *Republican Nat'l Comm. v. North Carolina State Board of Elections*, 120 F.4th 390, 395 (4th Cir. 2024) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 n.19 (1982)). "[T]he organization must make the necessary showing to demonstrate Article III standing—an injury-in-fact, caused by the defendant, that can be redressed by a favorable decision from the court." *Id.* (quoting *Hippocratic Medicine*, 602 U.S. at 393–94); *see also Lane v. Holder*, 703 F.3d 668, 674 (4th Cir. 2012) (recognizing that an organization must show it has suffered an "injury in fact," in that defendant's "actions impede its efforts to carry out its mission." (citation omitted); *Havens Realty*, 455 U.S. at 379 (observing that an organization

has standing to sue in its own right if the organization has suffered a "concrete and demonstrable injury to the organization's activities—with [a] consequent drain on the organization's resources—constitut[ing] . . . more than simply a setback to the organization's abstract social interests").

MACTE has done more than show an "intense interest" or "strong opposition" to the challenged conduct. ECF No. 24 at 16. It has demonstrated that numerous of its members suffered actual harm. ECF No. 1 at ¶ 14. If there were any doubt, the Supplemental Mullen Declaration, attached hereto, makes the point abundantly clear. Defendants terminated grant funding for three Maryland educational institutions, each of which are MACTE members: Towson University, Supp. Mullen Decl. at ¶ 6; the University of Maryland, Supp. Mullen Decl. at ¶ 7; and Frostburg State University, Supp. Mullen Decl. at ¶ 8. Because MACTE's member organizations suffered an injury in fact—*i.e.*, termination of grant funding—MACTE has standing to pursue this action. *See S. Walk*, 713 F.3d at 184.

To be sure, the termination of its member organizations' SEED and/or TQP grants also significantly impairs MACTE's core mission. ECF No. 1 at 14. This is a "concrete and demonstrable injury" to MACTE that drains its resources. *Havens Realty*, 455 U.S. at 379.

Finally, Plaintiffs alleged that all of the grant recipients are similarly situated. ECF No. 1 at ¶ 6 ("All of the Grant Recipients are similarly situated because the substance of each Termination Letter and added terms and conditions in the Grant Award Notifications from the Department are identical, indicating the same reasons with the same terminology for the grant terminations."). MACTE has, therefore, established organization standing.

6

C. **Plaintiffs Are Likely To Succeed On The Merits.**

    1. *This Court's NADOHE Order Applies to Plaintiffs in this Action and the Department should be Enjoined from Enforcing the Termination of the TQP, SEED, and TSL Grants.*

The heart of the Government's argument with respect to the NADOHE order[2] is that, yes, the Department terminated the grants at issue here because of DEI, which flowed from the J20 order, *see* ECF No. 24 at 8 (citing Department directives, including one that "Diversity, Equity, and Inclusion initiatives unlawfully discriminate on the basis of race, color, religion, sex, national origin, or other protected characteristic") (cleaned up), but, the Government argues, because the Department terminated the grants *before* the NADOHE order was issued, neither the order nor the reasoning supporting it apply. The Government is wrong.

*First*, and as set forth in Plaintiff's brief, the Government's argument turns the principles underlying the NADOHE order on their head. The J20 order was unconstitutionally vague because it did not sufficiently define what kind of conduct was unlawful, and therefore deprived courts of the ability to test its lawfulness and deprived grant recipients (and others) of the opportunity to seek to conform their conduct to the law *before* being deprived of rights. *See Nat'l Assoc. of Diversity Officers in Higher Ed., et al. v. Donald J. Trump, et al.*, No. 1:25-CV-00333-ABA, 2025 WL 573764, at *19-20 (D. Md. Feb. 21, 2025).

The fact that Plaintiffs here had no opportunity to even attempt to conform their conduct because the Government acted pursuant to an unlawful order before Plaintiffs sought relief does

---

[2] The Court issued a Clarified Preliminary Injunction on March 10, 2025 in *National Association of Diversity Officers in Higher Education, et al. v. Donald J. Trump, et al.*, No. 1:25-CV-00333-ABA. The Clarified Preliminary Injunction redefines "Enjoined Parties" to include: "Defendants other than the President, as well as all other federal executive branch agencies, departments, and commissions, and their heads, officers, agents, and subdivisions directed pursuant to the J20 and J21 Orders[.]" It does not modify the Court's prior Order issued on February 21, 2025 in any substantive way relevant to this action.

not make the J20 order less unconstitutionally vague or, critically, the continued enforcement of deprivations that flowed from the order less unlawful. *See Manning v. Caldwell for City of Roanoke*, 930 F.3d 264, 274 (4th Cir. 2019) (observing that the purpose of the fair notice requirement is to provide an opportunity for individuals to "conform their conduct to the proscriptions of the law") (citation omitted); *see also id.* at 278 (condemning unconstitutionally vague statutory language that invited arbitrary enforcement). To conclude otherwise would create incredible perverse incentives for government officials to shoot first and answer questions later, which is in fact what seems to have happened here. Plaintiffs' deprivation was compounded by the lack of any real opportunity for a post-deprivation challenge to the termination decisions because the form termination letters failed to provide any specificity about the reason that the Department found any individual grant allegedly "inconsistent with. . . Department priorities." The form termination letters instead merely list, disjunctively, five vague ways in which the specific grant at issue might be "inconsistent" with purported agency priorities.

Second, the Government argues at page 20 of its brief that the "documentary record indicates agency review;" this is presumably meant to be contrasted with generalized and unreasoned terminations based on the vague and undefined concepts in the J20 Order. The Government provides no citation to support its assertion of "agency review," which is, in fact, belied by the record before the Court. The termination letters and Grant Award Notifications ("GANs") filed with the Court, which Plaintiffs have alleged are essentially identical across all their members' terminations, *see* ECF 1 at ¶¶ 5-6, demonstrate that no independent agency review of individual grants, underscoring the fears that accompany a vague order like J20.

No exemplar grant termination presented by the Government lists any actual reason that any individual grant violates any term or condition of the award, to say nothing of how it might

violate the J20 Order (even if that order were not unlawful). None of the termination letters presented by Plaintiffs do either. *See* ECF No. 1-1 at 4, 10, 16, 22, 28, 34, 40; ECF No. 1-2 at 1, 3, 5, 7, 9, 11, 13; *see also* Richards Decl. Ex. A at 68, 72, Ex. B at 68. To the contrary, the Department undertook no individualized inquiry into specific grants, instead sending a form letter and a form basis in each GAN terminating the grants, and then issued a press release.

The Government mounts no serious challenge to the proposition that its terminations of Plaintiffs' members grants would be unlawful under the NADOHE order if undertaken today. Its argument that continued enforcement of those terminations is somehow insulated from scrutiny under the same standard lacks any justification and should be rejected by the Court.

    **2. *The Department's Termination of the TQP, SEED, and TSL Grants Violates the Administrative Procedures Act.***

The Government does not dispute that the grant terminations at issue here constitute final agency action under the APA.

In attempting to justify the terminations, the Government begins by conceding that Federal regulations allow agencies to terminate grants for "no other reason" apart from when "an award no longer effectuates . . . agency priorities." ECF No. 24 at 25 (citing 2 C.F.R. § 200.340).[3] As an initial matter, the Government points to no explanation as to *how* the individual terminated awards, or even the awards writ large, failed to effectuate those priorities, or what the priorities are, or by what process the priorities were "issued," beyond arguing that there are "big picture" priorities that every administration may have and that the grants here were terminated for that reason. The closest the Government comes to articulating a reason is a hedged denial that it was because of

---

[3] While it is true that the failure to effectuate agency priorities is the only ground for termination at issue here, there are actually four reasons a federal award could be terminated, all enumerated in Section 200.340(a).

9

DEI. *See* Def. Br. at 20 ("Although Plaintiffs assume DOE terminated their grants because of the J20 Executive Order that NADOHE enjoined, DOE does not concede this and the documentary record indicates independent agency review.") The Government's arguments here are neither developed nor persuasive.

First, the Government argues that the provision in the Uniform Guidance, 2 CFR Part 200 – the federal government rules for grants – stating that the Federal agency can terminate an award if it no longer "effectuates the program goals or agency priorities," 2 C.F.R. § 200.340, confusingly does not actually refer to agency grant Priorities at all. The Government acknowledges that if that were the case, the Priorities would need to be set through notice and comment rulemaking. *See* ECF No. 24 at 24. The Government's reading, divorcing the term "agency priorities" from the context of grants in which it appears, requires a willful disregard for the provisions that surround the use of the term. Section 200.340 is about termination of grants and 2 C.F.R. Part 200, in which it appears, is devoted entirely to the administration of federal awards. Section 200.340(a)(1) states that the terms and conditions of the grant must be followed, and 200.340(a)(4) refers to the goals of the grant program or agency priorities. A plain reading of 200.340(a)(4) makes it clear that throughout the subclause, the regulation speaks to different aspects of *grants* – namely, grant program goals and grant Priorities, the very Priorities that were set when the grant was awarded and which can only be reset through rulemaking.

As explained in Plaintiffs' brief in support of their motion, the statute governing how the Education Department specifically must set Priorities for grants is GEPA, 20 U.S.C. § 1232(d). The Department of Education is unique in being obliged by a specific statute to use notice and comment rulemaking for grants. GEPA instructs clearly that the ordinary and general APA exemption for rulemaking for grants does not apply to the Education Department (except in limited

10

circumstances, not relevant here). 20 U.S.C. § 1232(d). This matters because the Government argues as a policy matter, and erroneously, that if the rule is interpreted to mean what it says, every federal agency would be powerless to shift its activities with new Presidential administrations absent a lengthy public rulemaking process. But in fact, only the Education Department is subject to GEPA, and Congress stated that decision unambiguously, so the Government's argument in that regard holds no water.

The parties agree that agency Priorities do and must reflect each Administration's specific missions and agenda. Even so, Congress specifically passed a law stating that for the Department of Education, agency Priorities for grants must go through rulemaking. This Department has not done so, it cannot utilize new, un-set "Priorities" to determine what has or has not been effectuated.

But even if the Department's attenuated position that the words "agency priorities" for grants in the termination regulation did not refer to the same "priorities" explicitly required elsewhere in Department grant regulations, it would not change the fact that Defendants *still* did not follow the proper procedure in terminating the TQP, SEED, and TSL grants in February 2025. The Government's deflection on agency priorities just opens the door to greater problems.

The Department's articulated reason for the grant terminations in the GANs and termination letters, which Defendants repeat in their Opposition, is that the grants were terminated because they are "inconsistent with,[4] and no longer effectuate[], Department priorities," citing to 2 C.F.R. § 200.340(a)(4). But Section 200.340(a)(4) actually provides that a federal award may be terminated "[b]y the Federal agency or pass-through entity ***pursuant to the terms and conditions of the Federal award,*** including***,*** to the extent authorized by law, if an award no longer effectuates the program goals or agency priorities." (emphasis added). The word "including," in this instance,

---

[4] The phrase "inconsistent with" does not appear in the termination regulation. *See* 2 C.F.R. § 200.340(a)(4).

11

must be read to bring everything that follows it within the scope of the phrase that immediately precedes it, to wit: "pursuant to the terms and conditions of the grant award." Section 200.340(b) goes on to provide that "[t]he Federal agency or pass-through entity must clearly and unambiguously specify all termination provisions in the terms and conditions of the Federal award."

In other words, all reasons that the Federal agency may terminate the grant ***must*** be "clearly and unambiguously" specified in the terms and conditions of that particular grant, and ***only if*** the terms and conditions specify that the Federal agency may terminate for "no longer effectuat[ing] [] agency priorities" in a clear and unambiguous way is the Federal agency permitted to do so. This raises a number of obvious problems for the Government's proposed alternative reading of (a)(4), because the terms and conditions of the Federal awards here contain just one line that states that "2 CFR PART 200." *See* Supplemental Declaration of Kathlene Campbell on behalf of NCTR Ex. A at 4; Richards Decl. Ex. A at 15; Richards Decl. Ex. B at 14.

The Government points to nowhere in the Federal awards at issue where the terms and conditions specifically state that a grant may be terminated for no longer effectuating actual agency priorities, let alone a tortured reading of "agency priorities" so far divorced from the rest of the statutory and regulatory scheme so as to provide for limitless flexibility. It goes without saying, then, that the terms and conditions do not state in a "clear and unambiguous" manner that the Department may terminate awards on the basis of a change in what the Government somewhat mushily calls "big-picture Department priorities," which require no notice, no reasoned basis, and appear to be the definition of the arbitrariness the APA was intended to avoid.

It bears emphasis that agency priorities are not subject to whim. In pointing out the error of the Government's argument on this point, and the implications of their argument, Plaintiffs are

not inviting the Court to rule on matters beyond the scope of those necessary to resolve the claims at issue; this motion can and should be resolved by ruling that "agency priorities" do not change without rulemaking, and the Department has neither engaged in rulemaking nor explained how any of the terminated grants have ceased to effectuate priorities they met when they were awarded. But in the event the Court finds it necessary to test the Government's contrary argument, the Government fails in its task because nothing approaching the level of discretion to unilaterally terminate appeared alongside "2 CFR PART 200" in Plaintiffs' notices of award, so regardless of what "agency priorities" in the termination provision refers to, the Department failed to follow its regulations.

### D. Government's Argument with Respect to the Scope of Relief.

The Government argues that if relief is granted, it should be limited in two ways. First, the Government argues that if granted, a preliminary injunction should be limited in scope to include only the terminated grants of those member organizations which were specifically identified by name in Plaintiffs' Complaint. However, the Government fails to acknowledge that Plaintiffs alleged that all of the grant recipients are similarly situated. ECF No. 1 at ¶ 6 ("All of the Grant Recipients are similarly situated because the substance of each Termination Letter and added terms and conditions in the Grant Award Notifications from the Department are identical, indicating the same reasons with the same terminology for the grant terminations."). Simply providing relief to the member organizations which submitted Declarations in conjunction with the Complaint would deprive all of the similarly situated member organizations the relief to which they are similarly entitled and subject them to harm that the Government has already conceded is irreparable. *See also* Richards Decl. Ex. C (email from the Department on February 21, 2025 confirming that "[a]ll the grants have been terminated[.]"). Accordingly, it would be inequitable for relief to be limited in the manner suggested by the Government.

Second, while it is unclear if the Government is asking for the Court to remand the matter to the Department to provide an explanation for each grant termination in the absence of a preliminary injunction, or to limit an injunction to such relief, in any event, such a remand would likewise perpetuate irreparable harm and is accordingly inequitable and not in the public interest as a remedy.

### E.     Plaintiffs' Request for Removing the Route Pay Condition is Clear.

While the Government attempts to sidestep responding to Plaintiffs' allegations with respect to route pay by briefly arguing that Plaintiffs' reference to route pay is unclear, that is simply not the case. Not only does Plaintiffs' brief devote an entire section to detail how the imposition of the route pay condition is unlawful (ECF No. 5-1 at 33-34), but Plaintiffs' Motion expressly requests relief in the form of ordering Defendants to "[r]emoving the route pay grant conditions from TQP, SEED, and TSL grants." ECF No. 5 at 2. Plaintiffs' request is clear, as is its right to relief, and so Plaintiffs continue to request that its right to preliminary relief sought in its motion not be impaired by the Department unlawfully placing further roadblocks in the way of their continued access to grant funding.

## III.    CONCLUSION

For the foregoing reasons, and the reasons set forth in Plaintiffs' Memorandum of Law in Support of Their Motion for Temporary Restraining Order/Preliminary Injunction, Plaintiffs respectfully request that the Court enter a preliminary injunction consistent with its request.

Dated: March 12, 2025                                 Respectfully Submitted,

                                                  /s/ *Joshua W.B. Richards*
                                              Joshua W.B. Richards (*Admitted Pro Hac Vice*)
                                              Carolyn M. Toll (*Admitted Pro Hac Vice*)
                                              SAUL EWING LLP
                                              1500 Market Street, 38th Floor
                                              Philadelphia, Pennsylvania 19102
                                              Tel: (215) 972-7737
                                              joshua.richards@saul.com
                                              carolyn.toll@saul.com

                                              Daniel M. Moore (Bar No. 21834)
                                              SAUL EWING LLP
                                              1001 Fleet Street, Ninth Floor
                                              Baltimore, Maryland 21202-4359
                                              Telephone: (410) 332-8734
                                              Facsimile: (410) 332-8862
                                              daniel.moore@saul.com


                                              *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of March, 2025, **Plaintiffs' Reply in Further Support of Their Motion for Temporary Restraining Order/Preliminary Injunction and Exhibits** was filed with the Clerk of the Court by using the CM/ECF system. I certify that the following counsel of record are registered as ECF filers and that they will be served by the CM/ECF system:

**Molissa Heather Farber**
US Attorney's Office District of MD
36 S Charles St, 4th Fl
Baltimore, MD 21201
410-209-4862
molissa.farber@usdoj.gov

*Attorney for Defendants*

*/s/ Joshua W.B. Richards*
Joshua W.B. Richards