IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| AACTE, *et. al.*, | * | |
| | * | |
| PLAINTIFFS, | * | |
| | * | |
| v. | * | No. 25-cv-702 (JRR) |
| | * | |
| McMAHON, *et al.*, | * | |
| | * | |
| DEFENDANTS. | * | |

\*\*\*\*\*\*

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
EMERGENCY MOTION FOR RECONSIDERATION**

**I.      INTRODUCTION**

In just a few days, the Court's Preliminary Injunction Order ("Order) will force the Department of Education ("DOE") to release an extraordinary amount of funding to more than seventy terminated grant recipients. There is no guarantee DOE will be able to recover any of this money if they are ultimately victorious in this litigation. And because the Court lacked subject matter jurisdiction over the Complaint, its Order was likely erroneous.

Federal courts are courts of limited jurisdiction. In partially granting Plaintiffs' motion for a preliminary injunction, this Court acted without subject matter jurisdiction. The Court of Federal Claims has exclusive jurisdiction over Plaintiffs' complaint, which is at essence a claim for monetary damages exceeding $10,000. Moreover, decisions to terminate funding are discretionary and thus not reviewable under the Administrative Procedure Act ("APA").

As a result, Defendants respectfully request that the Court reconsider its order imposing a preliminary injunction in this case, instead vacating the order and dismissing the Complaint. Defendants seek a decision on an extremely expedited time frame given the scale of the Order.

1

## II.     PROCEDURAL BACKGROUND

On March 3, 2025, Plaintiffs filed a Complaint and Motion for Temporary Restraining Order or Preliminary Injunction ("Motion"). ECF 1; ECF 5. The Complaint and Motion arose from DOE's decision to terminate grants awarded through the Teacher Quality Partnership Program ("TQP"), the Supporting Effective Educator Development Program ("SEED"), and the Teacher and School Leader Incentive Program ("TSL"). ECF 1 at 2. Plaintiffs alleged that this decision was unconstitutionally vague in violation of their Fifth Amendment rights and arbitrary and capricious in violation of the APA. *Id.* at 36–37.

The Parties briefed the Motion on an expedited schedule and the Court held a hearing on March 13, 2025. ECF 18. On March 17, 2025, the Court determined that Plaintiffs were likely to succeed on their APA claims because the DOE likely acted arbitrarily and capriciously in terminating the grants. ECF 32 at 30–42. The Court also determined that Plaintiffs Fifth Amendment claims were unlikely to succeed. *Id.* at 24–30.

The Court issued a preliminary injunction (the "Order") on March 17, 2025, requiring DOE to reinstate the affected grants and enjoining DOE from terminating "any TQP, SEED, or TSL Grant Program award in a manner this court has determined is likely unlawful." ECF 33 at 1–2. The Order requires DOE to reinstate the subject grants within five business days from the date of the order. *Id.* at 1.

## III.    LEGAL STANDARDS

### A.     Rule 12(b)(1) - lack of subject matter jurisdiction

Before a court may rule on the merits of a claim, it must first determine if "it has the jurisdiction over the category of claim in suit (subject [] matter jurisdiction)." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–102 (1998)). The burden of proving subject matter jurisdiction

2

rests with the plaintiff. *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). The requirement that a plaintiff establish subject matter jurisdiction "as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." *Steel Co.*, 523 U.S. at 95 (internal quotation omitted). In determining whether subject matter jurisdiction exists "as a threshold matter," *id.*, a court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment," *Evans*, 166 F.3d at 647; *see also Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995) (holding that a court may consider exhibits outside pleadings). Challenges to the Court's subject matter jurisdiction "may be raised at any time," even after losing at trial and even if a party "previously acknowledged the trial court's jurisdiction." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434–35 (2011).

### B. Rule 54(b) - motion for reconsideration

Interlocutory orders "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). A district court has discretion "to reconsider and modify its interlocutory judgments" with the "goal . . . [of] reach[ing] the correct judgment under law." *In re Sinclair Broad. Grp., Inc. Sec. Litig.*, 473 F. Supp. 3d 529, 534 (D. Md. 2020) (internal quotations omitted) (citing *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003)). A court may consider new evidence and arguments on a motion to reconsider. *Lynn v. Monarch Recovery Mgm't, Inc.*, 953 F. Supp. 2d 612, 619–20 (D. Md. 2013).

### IV. ARGUMENT

To sue a federal agency, a plaintiff must identify an express waiver in the text of a federal law and show that its claim falls within the waiver's scope. *See FAA v. Cooper*, 566 U.S. 284, 290 (2012) ("a waiver of sovereign immunity must be 'unequivocally expressed' in statutory text"). Here, Plaintiffs seek to rely on the APA, which includes a limited waiver of sovereign immunity

3

for claims "seeking relief other than money damages." 5 U.S.C. § 702. That limited waiver does not, however, extend to this action because Plaintiffs' Complaint seeks to access funding that it believes the government is obligated to pay under a grant. Under these circumstances, relief under the APA is inappropriate and instead must be brought under the Tucker Act. 28 U.S.C. § 1491. Because the Court of Federal Claims has exclusive jurisdiction over claims under the Tucker Act, this Court lacked subject matter jurisdiction to issue a preliminary injunction. 28 U.S.C. § 1491(a)(1). *See also Robbins v. U.S. Bur. Of Land Mgm't*, 438 F.3d 1074, 1082 (10th Cir. 2006). Alternatively, decisions to terminate or reallocate funding are committed to agency discretion and thus fall outside the APA's scope.

> **A.    This Court lacks subject matter jurisdiction over the Complaint because the Court of Federal Claims has exclusive jurisdiction over claims for monetary damages exceeding $10,000.**

Where a party asks the Court to restore millions of dollars in terminated grant funding, the Court of Federal Claims has exclusive jurisdiction. Courts have consistently held that an APA claim that actually seeks monetary relief is in essence a claim for monetary damages exceeding $10,000. *See, e.g.*, *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002); *Portsmouth Redev. & Hous. Auth. v. Pierce*, 706 F.2d 471, 474 (4th Cir. 1983) (vacating district court order); *Ganiszewski v. Austin*, No. 23-cv-2195-BAH, 2024 WL 4227759, at *9 (D. Md. Sept. 17, 2024). And because the Court of Federal Claims has exclusive jurisdiction over such claims, this Court lacks subject matter jurisdiction over the instant case.

The Tucker Act provides that the "United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded" on "any express or implied contract with the United States." 28 U.S.C. § 1491(a). Where such a claim "seek[s] monetary relief in excess of $10,000," the Tucker Act "vest[s] subject matter jurisdiction exclusively in the Claims Court." *Portsmouth*, 706 F.2d at 473. *See also* 28 U.S.C. § 1491(a)(1).

Courts have routinely held that grants are included, holding, "grant agreements [are] contracts when the standard conditions for a contract are satisfied." *Columbus Reg'l Hosp. v. United States*, 990 F.3d 1330, 1338 (Fed. Cir. 2021); *see also San Juan City Coll. v. United States*, 391 F.3d 1357, 1360-62 (Fed. Cir. 2004) (treating a "Program Participation Agreement" and related grants under the Higher Education Act as a contract).

To determine whether a claim seeks monetary damages, courts look beyond the label a plaintiff gives to the relief requested. *James v. Caldera*, 159 F.3d 573, 579 (Fed. Cir. 1998). The fact that a complaint seeks only equitable relief on its face does not end the inquiry; instead, courts consider the "essence" of the claim to decide if it is monetary or not. *Randall v. United States*, 95 F.3d 339, 347 (4th Cir. 1996). *See also James*, 159 F.3d at 579 ("Our inquiry, however, does not end with the words of the complaint, however instructive they may be, for we still must look to the true nature of the action in determining the existence or not of jurisdiction." (internal quotation omitted)). An action compelling the government to pay money "past due under a contract" is an action at law, not equity. *Great-W.*, 534 U.S. at 210. Where a complaint effectively seeks "declaratory or injunctive relief . . . in the form of specific performance" against the government, Tucker Act jurisdiction is exclusive and "the APA thus does not waive sovereign immunity for such claims." *Robbins*, 438 F.3d at 1082.

Challenges to agreements terminated under 2 C.F.R. § 240.340 fall under the Tucker Act where a plaintiff "wants the Government to keep paying up." Mem. Order, *U.S. Conf. of Catholic Bishops v. U.S. Dept. of State*, No. 1:25-cv-00465 (TNM), ECF 37 at 10 (attached as ECF No. 36-3). Where an action "seeks the classic contractual remedy of specific performance," only the Court of Federal Claims may resolve the dispute. *Id.* (quoting *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985). Just last week, the District of Columbia dismissed a similar

5

complaint for lack of subject matter jurisdiction where the plaintiff's contract was terminated pursuant to 2 C.F.R. § 240.340. *See generally* ECF 36-3. The Court held that it "lacks the power" to "cancel the termination, pay money due, and reinstate the contracts." *Id.* at 12. In Maryland, Judge Hurson recently considered a different but analogous issue and determined that a service member's equitable request that the court revise his disability rating upward – a revision that would result in the award of monetary disability payments – was actually a request for monetary damages that fell outside the APA's scope and within the Tucker Act. *Ganiszewski*, 2024 WL 4227759, at *9. *See also*, *Portsmouth*, 706 F.2d at 474 ("[Federal] Claims Court jurisdiction cannot be avoided by framing an essentially monetary claim in injunctive or declaratory terms.").

Plaintiffs seek precisely such avoidant framing here. Although Plaintiffs facially seek the equitable remedy of grant reinstatement, as the Complaint and Motion make clear, the heart of their remedy is both contractual and monetary. Both the Complaint and Motion repeatedly state the importance of the grant funding for Plaintiffs' continued existence. *See generally*, ECF 1, 5. Indeed, Plaintiffs urgently sought grant reinstatement without any conditions so that they could immediately resume withdrawing money from their grant accounts. *See, e.g.*, ECF 5 at 22, 36. And the Court awarded such monetary damages in its Order, requiring DOE to reinstate all subject grants and effectively allow Plaintiffs to immediately resume drawing down their grant accounts. ECF 33. Moreover, Plaintiffs have repeatedly based their claims on violations to the terms and conditions of the grant awards. *See, e.g.*, ECF 25 at 13–15.

Because the essence of this complaint is monetary relief and specific enforcement of a contract, it falls under the Tucker Act and this Court lacks subject matter jurisdiction.

### B.  The grant terminations were discretionary and thus fall outside the scope of judicial review under the APA.

The Court's lack of subject matter jurisdiction constitutes necessary and sufficient grounds to vacate the Order and dismiss this case.  But the Court should also reconsider and vacate its decision because the challenged "agency action" is "committed to agency discretion by law" and therefore falls outside the scope of permissible judicial review under the APA.  5 U.S.C. § 701(a)(2).  The Court therefore lacks jurisdiction because the Department's decisions here—which concerned how best to re-allocate funds to align with its policy objectives—were quintessential decisions committed to agency discretion by law.

In *Lincoln v. Vigil*, 508 U.S. 182 (1993), the Supreme Court held that the Indian Health Service's decision to discontinue a program it had previously funded and to instead reallocate those funds to other programs was committed to agency discretion by law and thus not reviewable under the APA's reasoned-decisionmaking standards.  *See id.* at 185–88.  The Court explained that the "allocation of funds from a lump-sum appropriation is" an "administrative decision traditionally regarded as committed to agency discretion," because the "very point of a lump-sum appropriation is to give an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way." *Id.* at 192.

Indeed, "an agency's allocation of funds from a lump-sum appropriation requires 'a complicated balancing of a number of factors which are peculiarly within its expertise': whether its 'resources are best spent' on one program or another; whether it 'is likely to succeed' in fulfilling its statutory mandate; whether a particular program 'best fits the agency's overall policies'; and, 'indeed, whether the agency has enough resources' to fund a program 'at all.'" *Id.* at 193.  "Congress may always circumscribe agency discretion to allocate resources by putting restrictions in the operative statutes." *Id.*  But as long as the agency abides by the relevant statutes

(and whatever self-imposed obligations may arise from regulations or grant instruments), the APA "gives the courts no leave to intrude." *Id.*

The TQP, TSL, and SEED grant programs here confer significant discretion in determining how best to allocate appropriated funds across applicants. The statute governing TQP grants provides simply that "the Secretary is authorized to award grants, on a competitive basis, to eligible partnerships, to enable the eligible partnerships to carry out" certain specified activities. 20 U.S.C. § 1022a(a), (c). The TSL grant statute contains nearly identical language. 20 U.S.C. § 6632(a). Similarly, the SEED grant statute generally directs the Secretary to "award grants, on a competitive basis, to eligible entities for" five specified "purposes," such as "providing evidence-based professional development activities" and "making freely available services and learning opportunity to local educational agencies." 20 U.S.C. § 6672(a). No statute constrains the Secretary's discretion to determine how best to allocate the funding for each program among many different potential grant recipients, except for certain award priorities. *See, e.g.*, 20 U.S.C. § 6672(e) (giving SEED grant priority to "evidence-based activities"); 20 U.S.C. § 6632(d) (giving TSL priority to "high-need schools" and instructing fair distribution of grants "between rural and urban areas"). Accordingly, DOE's decisions in this context are discretionary decisions regarding how to allocate funds, not subject to arbitrary-and-capricious review under the APA. As this Court acknowledged in its memorandum opinion, DOE likely terminated the grants at issue not because of a Presidential command but potentially "because the Department head devised her own action items for the Department going forward." ECF 32 at 30 n.11.

Any suggestion that *Lincoln* does not apply because a single regulation—2 C.F.R. § 200.340(a)(4)—sufficiently constrains the Department's discretion is unavailing. This regulation reinforces, rather than restricts, the Department's discretion—making clear that the agency may

cancel a grant if it "no longer effectuates the program goals or agency priorities." 2 C.F.R. § 200.340(a)(4). The effect of terminating the specific grants at issue here is to enable the Department to award the remaining funds to *other* grant recipients and eligible applicants. That is, by definition, a decision to re-allocate funds.

As such, the APA does not allow for consideration of the grant terminations at issue here.

## V. CONCLUSION

Because the Court lacked subject matter jurisdiction to hear this case, the Court should reconsider its order granting Plaintiffs' motion for a preliminary injunction. The Court should further vacate its order and dismiss this case for lack of subject matter jurisdiction.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

By:  /s/
Molissa H. Farber
Assistant United States Attorney
36 S. Charles St., 4th Floor
Baltimore, Maryland 21201
(410) 209-4862
Molissa.Farber@usdoj.gov
*Counsel for Defendants*

9