# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## BALTIMORE DIVISION

AMERICAN ASSOCIATION OF
COLLEGES FOR TEACHER
EDUCATION, *et al.,*

        *Plaintiffs*,

   v.

LINDA MCMAHON,
AS SECRETARY OF EDUCATION, *et al.,*

       *Defendants*.

Civil Action No. 1:25-cv-00702-JRR

## PLAINTIFFS' RESPONSE IN OPPOSITION TO
## <u>DEFENDANTS' EMERGENCY MOTION FOR RECONSIDERATION</u>

## **TABLE OF CONTENTS**

I.   INTRODUCTION...................................................................................................1

II.  ARGUMENT.......................................................................................................1

    A.    Considering the Government's New Arguments on an Emergency Basis and in the Posture of Reconsideration is Inequitable..................................................1

    B.    The Tucker Act Does Not Divest this Court of Jurisdiction........................................2

    C.    The Government's Argument Regarding Agency Discretion Does Not Warrant Reconsideration..........................................................................................8

III. CONCLUSION ...............................................................................................10

i

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Am. Sci. & Eng'g, Inc. v. Califano*, 571 F.2d 58 (1st Cir. 1978)......................................3

*Atterbury v. U.S. Marshals Serv.*, 805 F.3d 398 (2d Cir. 2015) .................................3, 4

*B&B Trucking, Inc. v. USPS*, 406 F.3d 766 (6th Cir. 2005).........................................4

*Bowen v. Massachusetts*, 487 U.S. 879 (1988)........................................................4, 5

*Butler v. DirectSAT USA, LLC,* 307 F.R.D. 445 (D. Md. 2015).......................................9

*California v. United States Department of Education,* Civ. No. 1:25-cv-10548-MJJ, 2025 WL
        760825 (D. Mass. Mar. 10, 2025)........................................................................ *passim*

*Carlson v. Bos. Sci. Corp.*, 856 F.3d 320 (4th Cir. 2017)................................................9

*Carrero v. Farrelly*, 310 F. Supp. 3d 581 (D. Md. 2018)..............................................8, 9

*Cohens v. Md. Dep't of Human Res.*, 933 F. Supp. 2d 735 (D. Md. 2013) ......................9

*Crowley Gov't Servs., Inc. v. GSA*, 38 F.4th 1099 (D.C. Cir. 2022) .......................3, 4, 5

*Evans v. Trinity Indus.*, 148 F. Supp. 3d 542 (E.D. Va. 2015) ........................................9

*Fairholme Funds, Inc. v. United States*, 26 F.4th 1274 (Fed. Cir. 2022) .......................3

*Fisher v. United States*, 402 F.3d 1167 (Fed. Cir. 2005).................................................3

*Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. Dep't of Homeland Sec.*, 490 F.3d 940 (Fed.
        Cir. 2007).....................................................................................................................3

*Kanemoto v. Reno*, 41 F.3d 641 (Fed. Cir. 1994) .........................................................3

*Massachusetts v. Nat'l Institutes of Health*, No. 25-cv-10338, 2025 WL 702163
        (D. Mass. Mar. 5, 2025)..............................................................................................3, 8

*Matter of Vulcan Constr. Materials, LLC*, 433 F. Supp. 3d 816 (E.D. Va. 2019).........................9

*Megapulse, Inc. v. Lewis*, 672 F.2d 959 (D.C. Cir. 1982) ......................................3, 4, 5

*N. Star Alaska v. United States*, 14 F.3d 36 (9th Cir. 1994).........................................4

*Normandy Apartments, Ltd. v. HUD*, 554 F.3d 1290 (10th Cir. 2009) .......................4, 5

*Power Paragon, Inc. v. Precision Tech. USA. Inc.*, No. 2:08-cv-222,
        (E.D. Va. Dec. 18, 2008) ...............................................................................................9

*Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074 (10th Cir. 2006) .......................................4

*Schulman v. Axis Surplus Ins*. Co., 90 F.4th 236 (4th Cir. 2024) ....................................................8

*United States Conference of Catholic Bishops v. United States Department of State*,
Civ. No. 1:25-cv-00465-TNM, 2025 WL 763738 (D.D.C. Mar. 11, 2025) .............................7

*United States v. Duke Energy Corp.*, 218 F.R.D. 468 (M.D.N.C. 2003)......................................10

**FEDERAL CONSTITUIONAL PROVISIONS, STATUTES & RULES**

U.S. Const., V amend............................................................................................................4

28 U.S.C. § 1331 .................................................................................................................3

28 U.S.C. § 1491 .................................................................................................................3

Fed. R. Civ. P. 54(b) ..................................................................................................8, 9, 10

Fed. R. Civ. P. 59(e) ............................................................................................................9

Fed. R. Civ. P. 60(b) .......................................................................................................8, 9

# I.     INTRODUCTION

This Court should deny the Defendants' motion for reconsideration. Apart from the inequitable manner in which the Government has pursued this relief, its arguments about subject matter jurisdiction lack merit and do not warrant reconsideration of this Court's reasoned Order.

The error of the Government's argument is demonstrated most palpably in its proposed alternative. The unavoidable implication is that instead of seeking equitable relief here, affected Grant Recipients should file individual Tucker Act claims in the Court of Federal Claims for retrospective relief every time the Department fails to reimburse them for allowable expenses (never mind that the Government argued previously that venue was only proper in this case in the multiple districts where each individual affected grant was terminated). It is obvious that the Government's construct exacerbates, rather than remedies, the irreparable harm that it and the Court have already agreed will arise without equitable relief. The Government also misconstrues Plaintiffs' claims as seeking money damages, when Plaintiffs in fact seek equitable relief to enjoin the Department of Education's agency-wide policy of indiscriminate and unlawful SEED, TQP, and TSL grant termination. This Court should deny Government's motion and retain jurisdiction.

# II.     ARGUMENT

## A.     Considering the Government's New Arguments on an Emergency Basis and in the Posture of Reconsideration would be Inequitable and Incentivize "Emergencies" of a Party's own Creation.

Plaintiffs filed their Complaint and Motion for a Temporary Restraining Order/Preliminary Injunction on March 3, 2025 and served the Government by email that same day. (ECF Nos. 1, 5); Declaration of Joshua W. B. Richards, Exhibit A. Through a stipulated briefing schedule the Government was provided eight days after Plaintiffs' filings, until March 11th, to file a response in opposition to Plaintiffs' motion. (ECF No. 24). The Government made neither of the arguments raised in the instant Motion for Reconsideration in their briefs, at the hearing on March 13th, or at

any time before Defendants' 7:53 P.M. motion on March 18th, which they have asked the Court to decide within twenty-four hours.

The result is that complex and novel issues of law have been delayed and arguments first raised by the Government now fifteen days after Plaintiffs' filings must be addressed by Plaintiffs in little more than fifteen hours. The Government explains the need for such emergency relief by relying essentially on a balancing of the equities argument – that the ordered relief would cause harm to the Government – that this Court has already rejected, concluding instead, and correctly, that the continuing and catastrophic harm to Plaintiffs' members is irreparable and outweighs the harm to the Department of an injunction. (ECF No. 32 at 43-45). This Court need not reevaluate these considerations on reconsideration when there has been no change in the purported harm to Defendants from the Court's initial consideration.

While the Government may be correct that arguments about subject matter jurisdiction cannot be waived, the manner in which they are raised nevertheless bears consideration, lest courts create incentives for argument by ambush. The Government's other argument about agency discretion enjoys no such immunity from waiver and should be rejected outright.

### B. The Tucker Act Does Not Divest this Court of Jurisdiction.

The Government argues erroneously that the Tucker Act vests the Court of Federal Claims with exclusive jurisdiction over this case. (ECF No. 36-1 at 4). In pressing this mistaken argument, the Government fails to contend with two key decisions to have considered the Tucker Act recently and in precisely this context: *California v. United States Department of Education* ("*California*"), a case that is virtually identical to this one and which the parties both extensively cited in their preliminary injunction briefs, and *Massachusetts v. National Institutes of Health* ("*NIH*"), another case with a detailed analysis of the Tucker Act in the context of the Administrative Procedures Act

and broad-based agency grant modifications. *See* Civ. No. 1:25-cv-10548-MJJ, 2025 WL 760825 (D. Mass. Mar. 10, 2025); No. 25-cv-10338, 2025 WL 702163 (D. Mass. Mar. 5, 2025).

District courts have jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. This case—an action under the Administrative Procedure Act alleging violations of the federal Constitution, laws, and regulations—falls squarely within that statute. The Tucker Act[1] does not eliminate that jurisdiction. Plaintiffs allege illegal agency action, not breach of contract, and those claims belong in Article III courts.

The Tucker Act's implied divestiture applies only when a plaintiff's claim is "essentially a contract dispute," *Am. Sci. & Eng'g, Inc. v. Califano*, 571 F.2d 58, 61 (1st Cir. 1978), and is "at its essence a contract claim," *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982). That implied exception is narrow; courts routinely reject the "'broad' notion 'that any case requiring some reference to or incorporation of a contract is necessarily on the contract and therefore directly within the Tucker Act.'" *Crowley Gov't Servs., Inc. v. GSA*, 38 F.4th 1099, 1107 (D.C. Cir. 2022) (quoting *Megapulse*, 672 F.2d at 967); *see Fairholme Funds, Inc. v. United States*, 26 F.4th 1274, 1298 (Fed. Cir. 2022); *Atterbury v. U.S. Marshals Serv.*, 805 F.3d 398, 407-08 (2d Cir. 2015).

---

[1] The Tucker Act vests jurisdiction in the United States Court of Federal Claims with respect to "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Act: (1) "confers jurisdiction upon the Court of Federal Claims over the specified categories of actions brought against the United States," and (2) "waives the Government's sovereign immunity for those actions." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005). Generally, claims asserted in the Court of Federal Claims "must be for monetary relief; [they] cannot be for equitable relief, except in very limited circumstances[.]" *Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. Dep't of Homeland Sec.*, 490 F.3d 940, 943 (Fed. Cir. 2007). Importantly, and for that reason, claims filed in the Court of Federal Claims seek only retrospective relief. *See Kanemoto v. Reno*, 41 F.3d 641, 644-45 (Fed. Cir. 1994) ("The remedies available in [the Court of Federal Claims] extend only to those affording monetary relief; the court cannot entertain claims for injunctive relief or specific performance, except in narrowly defined, statutorily provided circumstances . . . .").

A broader approach would improperly "deny a court jurisdiction to consider a claim that is validly based on grounds other than a contractual relationship with the government." *Megapulse*, 672 F.2d at 967-68. And the existence of a contract in the background does not insulate the Government from challenges to illegal or unconstitutional agency action. *See, e.g.*, *Crowley*, 38 F.4th at 1102 (holding that APA claim challenging agency's authority belonged in district court because plaintiff "d[id] not seek to enforce or recover on [a] contract" and did not "seek monetary relief"); *see also Normandy Apartments, Ltd. v. HUD*, 554 F.3d 1290, 1300 (10th Cir. 2009).[2]

In assessing whether the Tucker Act impliedly precludes jurisdiction, courts consider "both . . . the source of the rights upon which the plaintiff bases its claims, and . . . the type of relief sought (or appropriate)." *Megapulse*, 672 F.2d at 968. Both factors favor this Court's jurisdiction.

*First*, Plaintiffs' claims are rooted in the Constitution, federal statutes, and federal regulations. They claim the Department's actions violate the Fifth Amendment to the United States Constitution and statutes and regulations governing various educational grants. (ECF No. 1 at 36-38). None of Plaintiffs' claims are founded on the breach of the terms of any contract; they are instead based on the misuse of regulations that apply to every federal agency as modified by an agency-specific statute. The "source of the rights," *Megapulse*, 672 F.2d at 968, is regulatory and statutory, not contractual. Plaintiffs' challenge is to broad agency overreach—the heart of the APA. *See Bowen v. Massachusetts*, 487 U.S. 879, 904-05 (1988). This conclusion would be true even if Plaintiffs were challenging only a single grant termination, but is even more evident here, where the challenge is to what amounts to an official agency policy that violates the APA.

---

[2] Circuits nationwide have followed *Megapulse*'s test for determining whether the Tucker Act impliedly precludes district court jurisdiction. *See Atterbury*, 805 F.3d at 408; *Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1083 (10th Cir. 2006); *B&B Trucking, Inc. v. USPS*, 406 F.3d 766, 768 (6th Cir. 2005); *N. Star Alaska v. United States*, 14 F.3d 36, 37 (9th Cir. 1994).

*Second*, "the type of relief sought (or appropriate)" in this case differs from the relief available from a Tucker Act claim. *Megapulse*, 672 F.2d at 968. Plaintiffs seek neither a money judgment nor an injunction directing the Government to pay money. Instead, Plaintiffs seek declaratory and injunctive relief returning the parties to the pre-existing status quo. The Supreme Court has made clear this type of suit may proceed in district court, because it "is not a suit seeking money in compensation for the damage sustained by the failure of the Federal Government to pay as mandated; rather, it is a suit seeking to enforce the statutory [and regulatory] mandate itself." *Bowen*, 487 U.S. at 900. Simply because "a judicial remedy may require one party to pay money to another" does not necessarily "characterize the relief as 'money damages.'" *Id.* at 893. Likewise, the fact that an injunction may later cause the Government to honor its obligation to make payments does not strip this Court of jurisdiction. *See Crowley*, 38 F.4th at 1108 ("[E]ven if the plaintiff filed the complaint with an eye to future monetary awards, a district court with otherwise appropriate jurisdiction may hear the claim and grant the proper equitable relief." (quotation omitted)). Plaintiffs seek declaratory and injunctive relief declaring Defendants' termination of TQP, SEED, and TSL grants—and their placement on route pay—unlawful. (ECF No. 1, at 38). That is nothing like an injunction to pay a specific sum. *See Crowley*, 38 F.4th at 1110-12; *Normandy Apartments*, 554 F.3d at 1296-97.

Finally, the Court should exercise jurisdiction because "the doubtful and limited relief available in the Claims Court is not an adequate substitute for review in the District Court." *Bowen*, 487 U.S. at 901. It is worth noting that not only did the Government not raise this issue earlier, the Government's Tucker Act arguments are irreconcilable with its affirmative venue arguments raised in its Opposition and at the March 13 hearing. The Government spent considerable space in its brief arguing that the "crush of litigation" ought not be lodged in a single court and that venue

was proper in the District of Columbia or, more properly, throughout the country in individual states where grant terminations occurred in the name of judicial economy and efficiency. ECF No. 24 at 13-16. Now the Government is of the view that each affected Grant Recipient should file individual and separate Tucker Act claims. But because Tucker Act relief is retrospective and monetary in nature, the Government seems to be suggesting that each affected Grant Recipient file a separate lawsuit *each time* the Department refuses to reimburse allowable costs. Aside from the staggering inefficiency this procedure would foist on the courts, it does not really get at the true harm that Plaintiffs are seeking to remedy. Plaintiffs' claims are not for the failure to reimburse individual, liquidated costs, but rather the Department of Education's wholesale policy of indiscriminate and unlawful grant termination.

Within the last month, the United States District Court for the District of Massachusetts considered this issue and determined that it retained jurisdiction—twice. As one court explained, in considering whether the Department had unlawfully terminated TQP and SEED grants:

> Defendants argue the waiver of sovereign immunity in the APA, 5 U.S.C § 702, does not extend to actions of contract which are within the exclusive jurisdiction of the Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491. Plaintiff States disagree, arguing waiver of sovereign immunity allows for suit in this Court.
>
> Very recently, another session in this District examined this precise issue in a substantially similar case to this one. *Massachusetts v. Nat'l Institutes of Health*, No. 25-cv-10338, 2025 WL 702163 (D. Mass. Mar. 5, 2025). In that case, in a thoughtful analysis, Judge Angel Kelley determined that the "essence" of the action was not contractual in nature since the source of the plaintiffs' rights was in federal statute and regulations and because the relief was injunctive in nature. *See id.* at *8. I agree with, and adopt, Judge Kelley's reasoning and conclusion. Here, similarly, Plaintiff States seek equitable relief in the form of reinstatement of the TQP and SEED grants. Plaintiff States also seek to enjoin Defendants from implementing, giving effect to, maintaining, or reinstating under a different name the termination of any previously awarded TQP and SEED grants. In other words, Plaintiff States seek to preserve the previous status quo to alleviate corresponding harm; they are not alleging claims for past pecuniary harms. Plaintiff States have also sufficiently shown that the dispute does not hinge on the terms of a contract between the parties,

but rather "federal statute and regulations put in place by Congress and the [Department]." *See id.* at *6. This Court retains jurisdiction.

*California*, 2025 WL 760825, at *1 (D. Mass. Mar. 10, 2025) (footnote omitted). Defendants do not mention, let alone attempt to distinguish *California*, despite that Court's rejection of an identical argument in a case in which the Government was defending identical conduct by the Department.

Instead, the Government attempts to liken the grants at issue in this case to the government contracts at issue in *United States Conference of Catholic Bishops v. United States Department of State*, Civ. No. 1:25-cv-00465-TNM, 2025 WL 763738 (D.D.C. Mar. 11, 2025) ("*USCCB*"). Unlike here, *USCCB* makes clear at the outset that the plaintiff in that case sought to enforce contractual provisions. *See USCCB*, 2025 WL 763738, at *1 ("[Plaintiff] seeks an emergency preliminary injunction preventing the Government from pausing or canceling contracts between them. These contracts require the Government to fund the Conference's provision of resettlement services to refugees."); *see also id.* at *2 (describing "cooperative agreements" between plaintiff and the U.S. Department of State's Bureau of Population, Refugees, and Migration as "contracts" lasting a one year period). *USCCB* is distinguishable (if it is even correctly decided, given that the *USCCB* plaintiffs sought prospective, not retrospective relief). Unlike *California* and *NIH*, *USCCB* does not address grants at all. It is a case that deals straightforwardly with government contracts. *USCCB* likewise does not turn on similar issues of administrative law, including the requirement that the Department of Education engage in rulemaking to set priorities, which are critical to this case. And the instant case is not one in which Plaintiffs seek to litigate damages that may arise under a contract, but, as this Court correctly determined, it is premised on the Department's agency-wide policy to invidiously terminate grant funding in likely violation of the APA.

For the same reasons articulated in *NIH* and then *California*, Plaintiffs' claim under the APA "turns on federal statute and regulations put in place by Congress" and the Department. *Massachusetts*, 2025 WL 702163, at *6. Plaintiffs' claims likewise seek to "preserve ongoing and prospective agreements" with the Department. *Id.* at *7. Because the nature of the relief Plaintiffs seek is equitable—seeking to preserve the previous status quo prior to action by the Department that this Court has already held is likely to violate the APA—this Court should retain jurisdiction.

### C. The Government's Argument Regarding Agency Discretion Does Not Warrant Reconsideration.

The Government's late-breaking argument regarding agency discretion fails for three reasons. First, because the Government did not raise its argument regarding agency discretion initially, it has waived its right to do so. *See Schulman v. Axis Surplus Ins*. Co., 90 F.4th 236, 245 (4th Cir. 2024) ("A party waives an argument by failing to present it in its opening brief or by failing to develop its argument—even if its brief takes a passing shot at the issue.").

Second, there is no basis for reconsideration of the Court's interlocutory order here. As this Court has repeatedly held, while motions for reconsideration of interlocutory orders under Rule 54(b) are not explicitly governed by Rules 59(e) and 60(b), courts should look to these rules as "guidance in consideration of [Rule 54(b)] motions." *Carrero v. Farrelly*, 310 F. Supp. 3d 581, 584 (D. Md. 2018). As further explained in *Carrero*:

> Under Rule 59(e), a motion to amend a final judgment may be granted only "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice. And under Rule 60(b), a court may grant relief from a final judgment or order for the following reasons: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud or misconduct by the opposing party; (4) voidness; (5) satisfaction; or (6) any other reason that justifies relief. Although there may be many valid reasons to reconsider an order, a motion to reconsider is not a license to reargue the merits or present new evidence that was previously available to the movant.

*Id.* (internal marks and citations omitted); *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017) ("Thus, a court may revise an interlocutory order under the same circumstances in which it may depart from the law of the case: (1) 'a subsequent trial produc[ing] substantially different evidence'; (2) a change in applicable law; or (3) clear error causing 'manifest injustice.'").[3] The Government makes no attempt to show that any of the factors warranting reconsideration apply here. At bottom, the Government is just seeking to amend its opposition brief retrospectively.

And third, the Government's argument regarding agency discretion is wrong, demonstrated not least of all by the obvious and strict requirements set by GEPA, which evince a clear congressional attempt to *deprive* the Department from exercising the "big picture" discretion the Government has argued about from the start without notice and comment rulemaking. Nevertheless, the Court should not reach the merits of an argument that was previously available but not presented. *See Cohens*, 933 F. Supp. 2d at 742-43 (citing *McLaurin v. E. Jordan Iron Works, Inc.*, 666 F. Supp. 2d 590, 596 (E.D.N.C. 2009), a*ff'd sub nom. McLaurin v. Vulcan Threaded Prods., Inc.*, 410 F. App'x 630 (4th Cir. 2011)) ("Moreover, "[i]n considering whether to revise interlocutory decisions, district courts in this Circuit have looked to whether movants presented new arguments or evidence, or whether the court has 'obviously misapprehended a

---

[3] *See also Butler v. DirectSAT USA, LLC,* 307 F.R.D. 445, 449 (D. Md. 2015) ("Although the standards articulated in Rules 59(e) and 60(b) are not binding in an analysis of Rule 54(b) motions, [] courts frequently look to these standards for guidance in considering such motions.") (internal citation omitted); *Cohens v. Md. Dep't of Human Res.*, 933 F. Supp. 2d 735, 741 (D. Md. 2013) (same); *Matter of Vulcan Constr. Materials, LLC*, 433 F. Supp. 3d 816, 820 (E.D. Va. 2019) (in determining motions for reconsideration under Rule 54(b), "the Court is 'guided by the[ ] general principals' of Rule 59(e)); *Power Paragon, Inc. v. Precision Tech. USA. Inc.*, No. 2:08-cv-222, Slip Op. at *2 (E.D. Va. Dec. 18, 2008) (applying the following grounds to deny a motion for reconsideration under Rule 54(b): "(1) an intervening change in controlling law, (2) the emergence of evidence not previously available, and (3) the correction of a clear error of law or the prevention of manifest injustice."); *Evans v. Trinity Indus.*, 148 F. Supp. 3d 542, 544 (E.D. Va. 2015) ("Absent a significant change in the law or the facts since the original submission to the court, granting a motion for reconsideration is only appropriate where, for example, the court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court . . . , or has made an error not of reasoning but of apprehension.") (internal quotations omitted).

party's position or the facts or applicable law.'") "Generally, 'motions to reconsider are not appropriate vehicles to advance . . . new legal theories not argued before the ruling.'" *Id.* (declining to entertain Plaintiffs' new arguments and denying motion to reconsider under Rule 54(b)); *see also United States v. Duke Energy Corp.*, 218 F.R.D. 468, 474 (M.D.N.C. 2003) (explaining that "'a party who fails to present his strongest case in the first instance generally has no right to raise new theories or arguments in a motion to reconsider'" an interlocutory order.). The Government's last minute effort to advance a new legal theory about agency action is not enough to warrant reconsideration here, least of all on an emergency timeline of the Government's own creation.

If the Court is inclined to set aside the significant body of authority counseling against considering this waived argument on the merits, Plaintiffs respectfully request that the Court exercise its discretion to permit Plaintiffs to supplement this response with additional briefing on the topic of agency discretion on a schedule that is comparable to that afforded the Government following the filing of Plaintiffs' motion; the grounds raised by the Government in support of their need for emergency relief have already been found by this Court to be outweighed by the irreparable harm to Plaintiffs resulting from the Department refusing to follow the law.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Emergency Motion for Reconsideration and award Plaintiffs any such additional relief that the Court deems just and proper under the circumstances.

Dated: March 19, 2025                    Respectfully Submitted,

/s/ Joshua W.B. Richards
Joshua W.B. Richards (*Admitted Pro Hac Vice*)
Carolyn M. Toll (*Admitted Pro Hac Vice*)
SAUL EWING LLP
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania 19102
Tel: (215) 972-7737
joshua.richards@saul.com
carolyn.toll@saul.com

Daniel M. Moore (Bar No. 21834)
SAUL EWING LLP
1001 Fleet Street, Ninth Floor
Baltimore, Maryland 21202-4359
Telephone: (410) 332-8734
Facsimile: (410) 332-8862
daniel.moore@saul.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of March, 2025, **Plaintiffs' Response in Opposition to Defendants' Emergency Motion for Reconsideration** was filed with the Clerk of the Court by using the CM/ECF system. I certify that the following counsel of record are registered as ECF filers and that they will be served by the CM/ECF system:

**Molissa Heather Farber**
U.S. Attorney's Office for the District of Maryland
36 S Charles St, 4th Fl
Baltimore, MD 21201
410-209-4862
molissa.farber@usdoj.gov

**Megan Lynn Micco**
U.S. Attorney's Office for the District of Maryland
36 S Charles St, 4th Fl
Baltimore, MD 21201
410-209-4800
megan.micco@usdoj.gov

*Attorneys for Defendants*

/s/ Joshua W.B. Richards
Joshua W.B. Richards