IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| AACTE, *et. al.*, | * | |
| | * | |
| PLAINTIFFS, | * | |
| | * | |
| v. | * | No. 25-cv-702 (JRR) |
| | * | |
| McMAHON, *et al.*, | * | |
| | * | |
| DEFENDANTS. | * | |

******

**REPLY IN SUPPORT OF DEFENDANTS'
EMERGENCY MOTION FOR RECONSIDERATION**

I.  **ARGUMENT**

Plaintiffs' response fails to defeat the motion. First, it is inescapable that Plaintiffs Complaint raises essentially a contract dispute, given Plaintiffs' allegations and arguments, along with the Court's findings thus far. Second, although the Government sincerely regrets its timing in raising this jurisdictional issue, there is no inequity that can be solved by an improvident exercise of subject matter jurisdiction. As to agency discretion, the Government rests on the arguments in its motion. ECF 36.

A.  **The Tucker Act deprives this Court of subject matter jurisdiction.**

The Tucker Act confers jurisdiction over "any claim against the United States founded upon . . . any express or implied contract with the United States" to the Court of Federal Claims. 28 U.S.C. § 1491(a)(1). This jurisdiction is only concurrent with district courts for civil actions not exceeding $10,000 in amount. 28 U.S.C. § 1346(a)(2). Plaintiffs agree that the Tucker Act "applies only when a plaintiff's claim is essentially a contract dispute" but then contorts to avoid characterizing their claim as a contract dispute. ECF 38 at 7. This attempt fails. Plaintiffs make the following arguments in their response: (1) their grants are not contracts under the Tucker Act, ECF 38 at 11; (2) their claims "are not founded on the breach of the terms of any contract," *id.* at

1

8; and (3) the type of relief sought is not contractual, *id.* at 9.¹  The Court should reject these arguments.  First, the Tucker Act applies to grants such as those Plaintiffs received.  Second, the terms and conditions of the grants form the basis for Plaintiffs' request for relief.  Third, Plaintiffs seek specific performance, which is quintessentially a contractual remedy.

### 1. The Tucker Act applies to grantees.

Plaintiffs argue that contracts and grants are considered differently under the Tucker Act.  ECF 38 at 11.  This is not accurate.  "Congress intended the jurisdiction and remedies of the Tucker Act to be exclusive in cases based on government contracts."  *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 895 (D.C. Cir. 1985).  Grants such as Plaintiffs are considered contracts under the Tucker Act.  *See Thermalon Indus., Ltd. v. United States*, 34 Fed. Cl. 411, 420–21 (holding that where the government uses "a bilateral agreement that satisfies the traditional requirements for a contract, then that arrangement would fall within the scope of this court's Tucker Act jurisdiction").

The Federal Circuit has held that "grant agreements [are] contracts when the standard conditions for a contract are satisfied, including that the federal entity agrees to be bound."  *Columbus Reg. Hosp. v. United States*, 990 F.3d 1330, 1338 (Fed. Cir. 2021).  Courts "apply the traditional four-part test for the existence of a government contract:  (1) mutuality of intent to contract; (2) offer and acceptance; (3) consideration; and (4) a government representative having actual authority to bind the United States."  *Id.* at 1339.

---

¹ Plaintiff points to *California v. U.S. Dept. of Ed.* as authority establishing that the Tucker Act does not deprive courts of jurisdiction to hear grant termination challenges.  ECF 38 at 10–11 (citing Civ. No. 1:25-cv-10548-MJJ, 2025 WL 760825 (D. Mass. Mar. 10, 2025).  This argument is unpersuasive since, as noted in the Government's opposition to the motion for a temporary restraining order, the *California* court made its decision without the benefit of briefing from the Government.  ECF 24 at 12.  Moreover, the Government is actively challenging *California* – it is currently on appeal.  *See* Notice of Appeal, *California v. U.S. Dept. of Ed.*, Civ. No. 1:25-cv-10548-MJJ, ECF No. 48; *California v. U.S. Dept. of Ed.*, No. 25-1244 (1st Cir. 2025).

There can be no genuine dispute that the grants at here satisfied these elements. The Government solicited grants, Plaintiffs applied for grants, and the Government awarded grants subject to terms and conditions that Plaintiffs accepted. *See, e.g.*, ECF 5-1 at 16–18 (discussing grant solicitation, application, and award process); *id.* at 18, 27–28 (discussing Government's compliance with terms and conditions of the grant awards); ECF 25 at 13–15 (same). There is no conceivable dispute regarding consideration or the authority of a Government representative.

As a result, the Tucker Act governs the grants at issue in this lawsuit.

### 2. Plaintiffs' claims are, at essence, contract claims.

Plaintiffs argue that the Tucker Act does not preclude jurisdiction because their claims are not contract claims. ECF 38 and 8. This argument is untenable given the case law, facts, and the Plaintiffs' arguments in this litigation thus far. The "straightforward" standard used "for determining whether a claim falls within the exclusive jurisdiction of the Claims Court pursuant to the Tucker Act . . . [is if the] 'action against the United States . . . is *at its essence* a contract claim.'" *Crowley Gov. Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1106–07 (D.C. Cir. 2022) (quoting *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.D.C. 1982). The parties agree that *Megapulse's* two-pronged analysis governs the Court's consideration of the essence of Plaintiffs' claim. *Megapulse*, 672 F.2d at 968; ECF 38 at 8. Here, both factors demonstrate that Plaintiffs' action is based in contract, depriving this Court of subject matter jurisdiction.

#### a. The source of Plaintiffs' rights is based in contract.

The first *Megapulse* prong is whether "the source of the rights upon which the plaintiff bases its claims" is a contractual relationship with the government. *Megapulse*, 672 F.2d at 968. The mere reference to contractual issue does not necessarily rise to this level, but where a claim for relief is "based on . . . a contractual relationship with the government" then it is contractual. *Crowley*, 38 F.4th at 1107 (finding action was based in tort and not contract where plaintiff did

3

"not seek to enforce any duty imposed upon" the government because of its contract).  Here, Plaintiffs' claims and rights flow from the terms and conditions of their grants.

Plaintiffs argue that because they allege "misuse of regulations," they do not advance a contract claim.  ECF 38 at 8.  Courts have rejected this argument where the alleged statutory violations do not provide a "substantive right to the remedy" a plaintiff seeks.  *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985).  Instead, where the Government violates a statute but "[t]he right to payments is created in the first instance by the contract," the claim is based in contract and falls within the Tucker Act.  *Compare id.* (holding government's violation of the Debt Collection Act did not entitle plaintiff to its requested payments or money owed, but only the contract between plaintiff and the government provided that entitlement) *with Megapulse*, 672 F.2d at 969 (holding that plaintiff's claim that government acted beyond the scope of its statutory authority did not fall under Tucker Act purview because the plaintiff "has gone to great lengths to demonstrate that it is not relying on the contract at all" and "does not claim breach of contract").  Similarly, *Ingersoll-Rand* applied the *Megapulse* framework to determine whether an APA claim fell under the Contract Disputes Act where the plaintiff claimed the government's termination of a contract for "convenience" was arbitrary and capricious in violation of the APA.  *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 75, 76–77 (D.D.C. 1985).  There, the Court held that where "[t]he contract included a termination-for-convenience clause" that the government invoked to terminate the contract, a challenge to the termination was a contractual dispute.  *Id.* at *78 ("That the termination also arguably violates certain other regulations does not transform the action into one based solely on those regulations.").

Plaintiffs also argue that because they advance Constitutional claims, they can avoid the Tucker Act's reach.  ECF 38 at 2–3.  This argument is unpersuasive since the Court has already

determined that Plaintiffs are unlikely to succeed on their Constitutional claims. ECF 32 at 24–30. And even if Plaintiffs could succeed on their vagueness claim, because their only adequate remedy is reinstatement of terminated contracts, removal of terms limiting payment, and compensation for expenses incurred since the termination, they ultimately seek a contractual remedy for an essentially contractual claim. *See* Section I.A.2.b, below (discussing Plaintiffs' request for contractual relief). *See also generally* ECF 5-1 (arguing that only grant reinstatement, payment of previously incurred obligations, and removal of route pay will avoid irreparable harm).

Here, as in *Spectrum* and *Ingersoll-Rand*, the contractual relationship between the grantees and DOE is the source of Plaintiffs' rights. Plaintiffs astoundingly argue that "[n]one of Plaintiffs' claims are founded on the breach of the terms of any contract." ECF 38 at 8. This is at complete odds with their complaint and motion for preliminary injunction. Plaintiffs have based their entitlement to relief on the Government's failure to comply with the "terms and conditions" of their grant awards, particularly terms governing termination pursuant to 2 C.F.R. § 200.340. *See, e.g.*, ECF 25 at 13 (arguing that DOE violated the APA by terminating grants contrary to "the terms and conditions of the grant"). The termination provision contained in 2 C.F.R. § 200.340(a)(4) inarguably confers no independent substantive rights absent the terms and conditions of each grantee's grant awards. *See* ECF 32 at 33–34 (summarizing "[t]he parties' dispute" as, in part, over "whether the February 2025 Grant Terminations complied with § 200.340(a)(4)" which was "in their terms and conditions"). Plaintiffs' case inescapably relies on compliance with the terms and conditions of these grants; they not only reference the terms in their filings as discussed above, but also repeatedly referred to grant terms and conditions at last week's hearing and attached the grant terms and conditions to their supplemental filings. *See, e.g.*, ECF 25-2 at 17–18 (providing terms and conditions of specific grants).

For this reason, Plaintiffs' reliance on *Massachusetts v. Nat'l Inst. Of Health* is misplaced. 2025 WL 702163 (D. Mass. Mar. 5, 2025); ECF 38 at 12. In *Massachusetts*, the Court found an action was not contractual where "Plaintiffs have not requested the Court to examine any contract or grant agreement created between the parties." 2025 WL 702163, at *6. That is not the case here. As discussed above, any suggestion that Plaintiffs' claims do not rely on "the breach of the terms of any contract," when Plaintiffs themselves have both provided and relied upon those terms, is meritless. ECF 38 at 8.

This "is at its essence a contract claim" that stems from a breach of contract terms and conditions. *Megapulse*, 672 F.2d at 967. As such the Court lacks subject matter jurisdiction.

        **b.**    **The type of relief Plaintiffs seek – specific performance and payment of damages – is contractual.**

*Megapulse*'s second prong, "the type of relief sought," offers no help to Plaintiffs either. 672 F.2d at 968. Plaintiffs argue that because they did not explicitly ask for a monetary payment, the Tucker Act does not apply. ECF 38 at 9. However, Plaintiffs cannot use "equitable flair" to disguise a contractual remedy." *United States Conf. of Catholic Bishops v. U.S. Dept. of State*, No. 1:25-cv-00465 (TNM), at 10 (D.D.C. Mar. 11, 2025) (filed as ECF 36-3) (citing *Spectrum*, 764 F.2d at 894). The heart of their requested remedy is monetary and contractual, thus the Tucker Act deprives the Court of jurisdiction.

Specific performance is exclusive "to actions that sound in contract," as is "the prototypical contract remedy of money damages." *Crowley*, 38 F.4th at 1107. Where "the disbursement of the project grant . . . . [and] [n]othing less" would satisfy the Plaintiffs, the Tucker Act deprives district courts of jurisdiction. *Concerned Citizens of Bushkill Tp. v. Costle*, 468 F. Supp. 21, 25 (E.D. Pa. 1978). In contrast, orders for declaratory relief or non-monetary injunctions may not fall within the Tucker Act. *See Megapulse*, 672 F.2d at 961 (holding Tucker Act did not apply to plaintiff's

6

nonmonetary request that the court enjoin the government from "the release of certain technical data without restrictions protecting Megapulse's claimed proprietary commercial rights in that data"); *id.* at 969 (noting that the plaintiff corporation "seeks no monetary damages against the United States, and its claim is not properly characterized as one for specific performance").

Here, Plaintiffs seek the quintessentially contractual remedies of specific performance and payment of money owed under a contract. Plaintiffs explicitly requested not only reinstatement of their grants, but "reimbursement for all otherwise allowable expenditures" and removal of any conditions that would prevent them from freely withdrawing money. ECF 5 at 1–2. Plaintiffs' Complaint does not simply a request a declaratory judgment from which monetary consequences might incidentally flow – they seek specific performance. *Compare AIDS Vaccine Advocacy Coal. v. U.S. Dept. of State*, 2025 WL 752378, at *8 (acknowledging that a natural consequence of setting aside an agency action "may be the release of funds withheld pursuant to that action") *with Spectrum*, 764 F.2d at 894 (holding that "an order compelling the government to pay money owed . . . under an executory contract" is "the classic contractual remedy of specific performance"). They unequivocally demand actual grant reinstatement, actual release of funds, and the compelled payment of expenses occurred after termination. ECF 5 at 1–2. The Court's order makes such monetary awards by requiring the terminated grants be reinstated, and that any restricted pay conditions added to the grants since termination be removed. ECF 33 at 1–2 (requiring grants be reinstated "in accordance with the . . . terms and conditions in place immediately prior to issuance of Termination Letters"). That Plaintiffs do not request "an injunction to pay a specific sum" fails to neutralize the fact that they request specific performance and payment of post-termination obligations. ECF 38 at 9.

Because Plaintiffs seek the most quintessential contractual remedies, the Tucker Act deprives this Court of subject matter jurisdiction.

## B. Defendant's failure to raise this argument at the preliminary injunction hearing does not defeat the motion.

Plaintiffs argue that considering these subject matter jurisdiction arguments now would be inequitable. ECF 38 at 5–6. Although the Government deeply regrets that it did not raise these Tucker Act arguments in its initial opposition to the motion for preliminary injunction, counsel's failure does not relieve the Court of the obligation to determine whether it has subject matter jurisdiction over the instant claim. *Arbough v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[C]ourts . . . have an independent obligation to determine whether subject-matter jurisdiction exists."). Arguments regarding subject matter jurisdiction "can never be forfeited or waived." *Id*.

Here, the Government did not delay raising its jurisdictional arguments in bad faith; rather, undersigned counsel missed the applicability of the Tucker Act while striving to comply with the expedited briefing schedule in this case. With more time for institutional review of the legal landscape and the Court's order, the Government recognized its error and promptly brought the issue to the attention of the Court and the parties. Although the Government recognizes the wasted effort involved in litigating this matter in the wrong forum so far, that effort pales in comparison to the effort that would be expended continuing to litigate this matter without subject matter jurisdiction. Moreover, obligating the Government to comply with a preliminary injunction requiring the reinstatement of many terminated grants when that order is likely to be overturned due to lack of jurisdiction would also be deeply inequitable.

## II. CONCLUSION

For these reasons, and those stated in the Emergency Motion to Reconsider and supporting memorandum, ECF 36, 36-1, this Court should grant the motion, vacate its memorandum opinion and order, and dismiss this case.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

By:     /s/
Molissa H. Farber
Assistant United States Attorney
36 S. Charles St., 4th Floor
Baltimore, Maryland 21201
(410) 209-4862
Molissa.Farber@usdoj.gov
*Counsel for Defendants*