IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **AMERICAN ASSOCIATION OF COLLEGES FOR TEACHER EDUCATION,** *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> **LINDA MCMAHON, in her official capacity as Secretary of Education,** *et al.*, <br><br> *Defendants*. | Civil No.: 1:25-cv-00702-JRR |

**MEMORANDUM OPINION AND ORDER**[1]

This matter comes before the court on Defendants Linda McMahon, in her official capacity as Secretary of Education, U.S. Department of Education, and Donald J. Trump's, in his official capacity as President of the United States, Emergency Motion for Reconsideration. (ECF No. 36; the "Motion.") The court has reviewed all papers. No hearing is necessary and none has been requested. Local Rule 105.6 (D. Md. 2023).

**I.     BACKGROUND**

As discussed at length in its memorandum opinion issued Monday, March 17, 2025, Plaintiffs AACTE, NCTR, and MACTE initiated this action on March 5, 2025, asserting two claims: violation of the Due Process Clause of the Fifth Amendment (Count I) and violation of the APA (Count II). (ECF No. 1.) Plaintiffs' claims arise from the Department's termination of grants awarded through the TQP, SEED, and TSL Grant Programs. Following briefing and a hearing on Plaintiffs' motion for preliminary injunction, the court granted in part and denied in part Plaintiffs' motion. (ECF Nos. 32, 33.) Specifically, the court held that Plaintiffs demonstrated a clear

---

[1] All terms defined in the court's memorandum opinion at ECF No. 32 shall have the same meanings here.

likelihood of success on the APA claim and issued a preliminary injunction that, *inter alia*, requires Defendants to reinstate TQP, SEED, and TSL Grant Awards of Plaintiff NCTR and Plaintiffs' members, and enjoins Defendants from terminating TQP, SEED, or TSL awards in a manner the court found likely in violation of the APA. *Id.* Defendants are required to reinstate the aforementioned TQP, SEED, and TSL awards within five business days of the court's order. (ECF No. 33.)

At 7:53 p.m. on March 18, 2025, Defendants filed their emergency Motion, requesting the court rule on the Motion within 24 hours. (ECF No. 36.) That same evening, the court ordered Plaintiff to respond by 12:00 p.m. today, March 19, 2025. (ECF No. 37.) Plaintiffs met that deadline with 8 minutes to spare (ECF No. 38), following which Defendants filed a reply at 2:11 p.m. today (ECF No. 40).

## II.   LEGAL STANDARD

### A. Federal Rule of Civil Procedure 54(b)

Defendants bring this Motion pursuant to Federal Rule of Civil Procedure 54(b). (ECF No. 26-1 at p. 2.) Rule 54(b) "governs reconsideration of orders that do not constitute final judgments in a case (*i.e.,* interlocutory orders)." *Carrero v. Farrelly*, 310 F. Supp. 3d 581, 583–84 (D. Md. 2018). Rule 54(b) provides that "any order or other decision . . . that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims." FED. R. CIV. P. 54(b). "Compared to motions to reconsider *final* judgments pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, Rule 54(b)'s approach involves broader flexibility to revise *interlocutory* orders before final judgment as the litigation develops and new facts or arguments come to light." *U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Virginia, LLC*, 899 F.3d 236, 257 (4th Cir. 2018) (emphasis in original) (citing *Carlson v. Boston Sci. Corp.*, 856

2

F.3d 320, 325 (4th Cir. 2017)). Resolution of a motion for reconsideration of an interlocutory order "is committed to the discretion of the district court." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003). Importantly, "the discretion afforded by Rule 54(b) is not limitless;" the Fourth Circuit has "cabined revision pursuant to Rule 54(b) by treating interlocutory rulings as law of the case." *U.S. Tobacco Coop. Inc.*, 899 F.3d at 256–57. Accordingly, a court may revise an interlocutory order to account for "(1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice." *Id.* at 257 (quoting *Carlson*, 856 F.3d at 325).

### B. Federal Rule of Civil Procedure 12(b)(1)[2]

"Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes dismissal for lack of subject matter jurisdiction." *Barnett v. United States*, 193 F. Supp. 3d 515, 518 (D. Md. 2016). "The plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *United States ex rel. Fadlalla v. DynCorp Int'l LLC*, 402 F. Supp. 3d 162, 176 (D. Md. 2019) (citing *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999)). "In determining whether jurisdiction exists, 'the court may look beyond the pleadings and the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue.'" *Id.* at 176 (quoting *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003)).

Subject matter jurisdiction challenges may proceed in two ways: "either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting 'that the jurisdictional allegations of the complaint [are] not true.'" *Mayor & City Council of Baltimore v. Trump*, 416 F. Supp. 3d 452, 479 (D. Md. 2019) (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). Defendants here mount

---

[2] Defendants at once title their Motion as one "for Reconsideration" per Federal Rule of Civil Procedure 54(b) and seek dismissal of the Complaint per Rule 12(b)(1).

a facial challenge to this court's exercise of jurisdiction. In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192; *see Ministry of Defence of State of Kuwait v. Naffa*, 105 F.4th 154, 159 (4th Cir. 2024) (same).

Inasmuch as subject matter jurisdiction is unwaivable and may be raised at any time by any party, including by the court *sua sponte*, the court dispenses with discussion of Rule 54 and moves to the heart of the matter.

### III. ANALYSIS

Defendants now advance two arguments, both jurisdictional in nature, and neither of which was raised in their briefing or oral argument on Plaintiffs' motion for preliminary injunction.

First, Defendants argue the court lacks subject matter jurisdiction because the United States Court of Federal Claims has exclusive jurisdiction over this action in accordance with the Tucker Act. Second, Defendants contend that Plaintiffs' challenge to the Department's final agency action—termination of the Grant Program Awards by the Termination Letter—was a matter committed to agency discretion and, as such, is beyond the grasp of judicial review.

#### A. Tucker Act – 28 U.S.C. § 1491

"The Tucker Act grants jurisdiction to the United States Court of Federal Claims 'to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, . . . or for liquidated or unliquidated damages in cases not sounding in tort.'" *Randall v. United States*, 95 F.3d 339, 346 (4th Cir. 1996) (quoting 28 U.S.C. § 1491). "Jurisdiction is exclusive in the Court of Federal Claims for claims over $10,000, while district courts have concurrent jurisdiction with the Court of Federal Claims

for claims at or under $10,000." *Coleman v. Kendall*, 74 F.4th 610, 615 (4th Cir. 2023), *cert. denied,* 144 S. Ct. 818 (2024) (citing *Randall*, 95 F.3d at 347).

While not novel, *Massachusetts v. Nat'l Institutes of Health*, 25-cv-10338, 2025 WL 702163, at *5 (D. Mass. Mar. 5, 2025), "[t]he interplay between the Tucker Act and the APA is somewhat complicated and raises some significant issues of federal court jurisdiction." *Randall*, 95 F.3d at 346. "The APA allows private parties to sue the federal government in district court over final agency actions, so long as they seek relief other than monetary damages 'for which there is no other adequate remedy in a court.'" *Coleman*, 74 F.4th at 615 (quoting *Randall*, 95 F.3d at 346). "Claims for money, by contrast, proceed under the Tucker Act and in the Court of Federal Claims." *Williams v. Roth*, No. 8:21-CV-02135-PX, 2022 WL 4134316, at *5 (D. Md. Sept. 12, 2022) (citing 28 U.S.C. §§ 1346(a)(2), 1491). To that end, "where 'a plaintiff has an adequate remedy by suit under the Tucker Act,' they are precluded from review under the APA." *Coleman*, 74 F.4th at 615 (quoting *Randall*, 95 F.3d at 346); *see also Maine Cmty. Health Options v. United States*, 590 U.S. 296, 324 (2020) (noting the flip side of the same coin: "[t]he Tucker Act yields when the . . . Administrative Procedure Act [] provides an avenue for relief").

"There is a 'distinction between an action at law for damages,' which provides monetary compensation, and 'an equitable action for specific relief,' which might nonetheless require monetary relief." *Massachusetts,* 2025 WL 702163, at *7 (first quoting *Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988); and then citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) (explaining "whether [restitution] is legal or equitable depends 'on the basis for [the plaintiff's] claim' and the nature of the underlying remedies sought" (citations omitted)). "To determine whether a plaintiff seeks primarily injunctive relief such that a district court has jurisdiction over his claim, courts must look to the 'essence' of the complaint and whether

5

the relief requested is 'not . . . an incident of, or collateral to, a monetary award.'" *Coleman*, 74 F.4th at 615–16 (quoting *Randall*, 95 F.3d at 346).

"The classification of a particular action as one which is or is not 'at its essence' a contract action depends both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate)." *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982). "Courts must read the Complaint with an eye toward 'the true nature of the action' to ascertain whether it is, in fact, seeking money damages or some other relief." *Williams v. Roth*, No. 8:21-CV-02135-PX, 2022 WL 4134316, at *5 (D. Md. Sept. 12, 2022) (quoting *James v. Caldera*, 159 F.3d 573, 579 (Fed. Cir. 1998)). Importantly, "a suit which does not seek monetary damages does not arise under the Tucker Act simply because the plaintiff's success will result in eventual monetary gain from the government." *Harrison v. Kendall*, 670 F. Supp. 3d 280, 297 (E.D. Va. 2023) (quoting *Powe v. Sec'y of Navy*, 35 F.3d 556, at *2 (4th Cir. 1994) (unpublished table decision)); *see Roetenberg v. Sec'y of Air Force*, 73 F. Supp. 2d 631, 636 (E.D. Va. 1999) (explaining that "[i]t is settled that where . . . the essence of a claim is the equitable relief sought, and any financial ramifications of a favorable decision are subordinate to the equitable relief, the Court of Federal Claims does *not* have exclusive jurisdiction over that claim" (emphasis in original)). "The fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'" *Bowen*, 487 U.S. at 893.

"A hallmark of such equitable actions is the existence of prospective relief in ongoing relationships." *Massachusetts*, 2025 WL 702163, at *7 (citing *Bowen*, 487 U.S. at 905). "An adjudication of the lawfulness of [an agency's] regulatory interpretation will have future impact on the ongoing relationship between the parties. The Court of Federal Claims cannot provide this relief." *Katz v. Cisneros*, 16 F.3d 1204, 1209 (Fed. Cir. 1994). In contrast, a suit properly proceeds

6

in the Court of Federal Claims under the Tucker Act where plaintiffs "seek not prospective, nonmonetary relief to clarify future obligations but specific sums already calculated, past due, and designed to compensate for completed labors." *Me. Cmty. Health Options v. United States*, 590 U.S. 296, 298 (2020).  Indeed, it is generally understood that the Court of Federal Claims "has no power to grant equitable relief." *Richardson v. Morris*, 409 U.S. 464, 465 (1973).  The Tucker Act, however, allows for narrow exception to empower the Court of Federal Claims to provide injunctive relief only when such relief is necessary to provide an entire remedy and when the injunction is "an incident of and collateral to" an award of monetary relief.  28 U.S.C. § 1491(a)(2).

In *Bowen*, the Supreme Court considered whether a district court had subject matter jurisdiction over the Commonwealth of Massachusetts' request for judicial review of the Secretary of Health and Human Services' Medicaid disallowance decision; and to order the Secretary to pay the state the monies it asserted had been wrongfully disallowed (not reimbursed). *Bowen v. Massachusetts,* 487 U.S. at 882.  The Court concluded: "since the orders are for specific relief (they undo the Secretary's refusal to reimburse the State) rather than for money damages (they do not provide relief that substitutes for that which ought to have been done) they are within the District Court's jurisdiction under § 702's waiver of sovereign immunity." *Id*. at 910.

*Bowen* sets forth a thorough explication – relying with favor on Judge Bork's analysis in *Maryland Dept. of Health Resources v. Dept. of Health and Human Svc.,* 763 F.2d 1441 (D.C. Cir. 1985) – of the critical distinction between "money damages" and "monetary relief."  487 U.S. at 894–96.  In sum, the Court explains that while money damages is always a form of monetary relief, not all monetary relief is money damages.  And an action to enforce a statute (there, the Medicaid Act), "which happens to be one for the payment of money" does not render it subject to the Tucker Act. *Bowen*, 487 U.S. at 900.  "The fact that the mandate is one for the payment of money must

7

not be confused with the question whether such payment, in these circumstances, is a payment of money as damages or as specific relief." *Id.* at 900-901.

In *California v. U.S. Department of Education*, Judge Joun concluded in favor of the district court's subject matter jurisdiction on a Tucker Act challenge. He concluded that the plaintiffs (several states) "seek equitable relief in the form of reinstatement of the TQP and SEED grants. Plaintiff States also seek to enjoin Defendants from implementing, giving effect to, maintaining or reinstating under a different name the termination of any previous awarded TQP and SEED grants. In other words, Plaintiff States seek to preserve the previous status quo to alleviate corresponding harm; they are not alleging claims for past pecuniary harms." *California v. U.S. Dep't of Educ.*, — F. Supp. 3d. — , No. CV 25-10548-MJJ, 2025 WL 760825, at *1 (D. Mass. Mar. 10, 2025) (citing *Massachusetts,* 2025 WL 702163, where Judge Angel Kelley found the essence of the plaintiffs' claims was not contractual in nature because "Plaintiffs do not bring claims for past pecuniary harms. Rather, like petitioners in *Bowen*, their claims are to preserve their ongoing and prospective agreements with [the agency]")); *see also Aids Vaccine Advoc. Coal. v. United States Dep't of State*, — F. Supp. 3d. — , No. CV 25-00400 (AHA), 2025 WL 752378, at *9 (D.D.C. Mar. 10, 2025) (finding that "Plaintiffs do not seek money damages and, . . . do not seek the contractual remedy of 'money in compensation for [their losses], whatever they may be,' in relation to any breach of their agreements . . . . Indeed, it would be quite extraordinary to consider Plaintiffs' claims to sound in breach of contract when they do not at all depend on whether the terms of particular awards were breached—they instead challenge whether the agency action here was unlawful, irrespective of any breach").

On review of the caselaw, controlling and persuasive alike, whether the Tucker Act controls (*i.e.*, divests a district court of jurisdiction) is fact-specific and requires analysis tailored

to the particular facets of the claims before the court. The court must consider: 1) the beating heart of the plaintiff's complaint; and 2) what relief will render the plaintiff whole if the complaint has merit.

Here, the court concludes that the Tucker Act does not apply and this court has subject matter jurisdiction over Plaintiffs' claims for the following chief reasons:

1. Plaintiffs do not seek money damages for past wrongs. Plaintiffs come to court seeking redress for alleged statutory and regulatory violations that, if left unchecked, will have immediate, lasting and irreparable harm of an existential nature to their programs, and resultant grave harm to the communities they serve. Plaintiffs' seek reinstatement of their status as Grant Program awardees so they can resume and sustain the capacity to run their education-related programming across the nation; that the court's order for reinstatement effects the Department's purse does not render this a contract claim for money damages. That is not its essence;

2. In addition to reinstatement, Plaintiffs seek forward-looking equitable relief to prevent Defendants from terminating other Grant Program awards in the manner about which they complain and for which they requested preliminary injunctive relief. The Court of Federal Claims lacks the authority to afford the complete equitable relief Plaintiffs seek;

3. The narrow circumstances in which the Court of Federal Claims may issue injunctive relief per the Tucker Act do not exist here, which is to say, equitable relief is not incident of, or collateral to, an award of money damages. 28 U.S.C. § 1491(a)(2);

4. In addition to restoration of their Grant Program status, Plaintiffs demand the court order Defendants to remove "route pay grant conditions" (requiring pre-approval to access grant funds), which Plaintiffs allege Defendants unlawfully put in place. Here, again, Plaintiffs seek

forward-looking equitable relief to remove what they allege are unlawful roadblocks to their programming. The Court of Federal Claims lacks the authority to provide this relief; and

    5.      Plaintiffs' Complaint requires the court to review and make findings regarding the parties' relationship pursuant to a constellation of sources: the Grant Programs' respective authorizing statutes, the Departments regulations to implement those statutes; and GEPA. This, alone, removes this action from the Tucker Act's grant of exclusive jurisdiction to the Court of Federal Claims.

The cases Defendants cite in their reply are unavailing. *Spectrum Leasing Corp. v. United States*, for example, involves a private government contractor who contracted to provide data processing services and equipment to the General Services Administration. 764 F.2d 891 (1985). When the plaintiff failed to provide deliverables, GSA invoked the liquidated damages provision of the contract and withheld payment on outstanding invoices. The contractor sued, claiming GSA violated the Debt Collection Act (31 U.S.C. §§ 3701, *et seq*.); the district court dismissed the action on the basis that (per the Tucker Act), it lacked subject matter jurisdiction, and the Court of Federal Claims had exclusive jurisdiction. *Id.* Nothing about that case resembles the instant action.

In *Thermalon Indus. v. United States*, 34 Fed. Cl. 411 (1995), the plaintiff sued the United States in the Court of Federal Claims for breach of contract claiming the government (the National Science Foundation) wrongfully withheld payment for work done under a research grant. The government argued the district court had exclusive jurisdiction because the grant was "an agreement intended to effectuate the sovereign obligations of the United States and that all such agreements necessarily fall outside the scope of . . . the Tucker Act." *Id.* at 413. The Court of Federal Claims rejected that argument because the authorizing statute (the National Science Foundation Act of 1950, 42 U.S.C. §§ 1861, *et seq*.) specifically empowered the National Science

Foundation to enter "contracts or other arrangements" to promote the sciences.  There, the plaintiff sought money damages for unpaid invoices for work completed per the grant contract.  Nothing about that the court's determination, as Defendants note in their reply, that a grant can fill the essential elements of a contract is remarkable; nor is the court's ruling that Thermalon brought a standard issue breach of contract action against the United States for non-payment of services.  Again, as said above, Plaintiffs here do not seek an award of money damages for work performed or to compensate for a wrong.

### B. Judicial Review

Defendants also seek reconsideration of the court's preliminary injunction on the basis that the challenged agency action at issue here—termination of the Grant Awards on the basis of agency priorities—is "committed to agency discretion by law" and falls outside the scope of permissible judicial review under the APA.  (ECF No. 36-2 at p. 7.)  *See* 5 U.S.C. § 702(a)(2).

The APA provides "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.  "That language sets up a 'basic presumption of judicial review' of agency action." *Holbrook v. Tennessee Valley Auth.*, 48 F.4th 282, 287 (4th Cir. 2022) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 140 (1967)).  The text carves out two exceptions to that "basic principle."  *Id.*  First, where "statutes preclude judicial review" per § 701(a)(1); and second, where "agency action is committed to agency discretion by law" per § 701(a)(2).  *Holbrook,* 48 F.4th at 287. With regard to the second, "[a]gency action is committed to the agency's discretion when no judicially manageable standards are available to assess how and when an agency should exercise its discretion such that a court would have 'no law to apply.'" *Pharm. Coal. for Patient Access v. United States*, 126 F.4th 947, 964 (4th Cir. 2025) (quoting *Heckler v.*

11

*Chaney*, 470 U.S. 821, 830–31 (1985)).  Of import here, the APA's prohibition of judicial review of actions committed to agency discretion by law, and a defect related thereto, "goes to subject matter jurisdiction." *Id.* (citing *Angelex Ltd. v. United States*, 723 F.3d 500, 505–506 (4th Cir. 2013)).

Defendants' argument relies exclusively on the Supreme Court's opinion in *Lincoln v. Vigil*, 508 U.S. 182 (1993).  (ECF No. 36-1 at p. 7–8.)  *Lincoln* is materially distinguishable from the facts here.  In *Lincoln,* the Court's decision concerned the Indian Health Service's decision to reallocate resources from the Indian Children's Program to a "nationwide effort to assist" children previously served by the Indian Children's Program.  508 U.S. at 184.  The Court held that the Indian Health Service's "decision to discontinue the Program was 'committed to agency discretion by law' and therefore not subject to judicial review under the Administrative Procedure Act, 5 U.S.C. § 701(a)(2), and that the Service's exercise of that discretion was not subject to the notice-and-comment rulemaking requirements imposed by § 553." *Id.*

Relevant here, the Indian Health Service, per the Snyder Act, 25 U.S.C. § 13, and the Indian Health Care Improvement Act, 25 U.S.C. §§ 1601, *et seq.*, received an annual appropriation from Congress.  Neither the Snyder Act nor the Indian Health Care Improvement Act expressly referenced the Indian Children's Program or any other potential recipient/beneficiary other than general reference to "Indian health."  508 U.S. at 194.  By virtue of that omission, Congress, the Court held, left it to the sound discretion of the Indian Health Service how to spend or use the appropriated funds.  *Id.* at 185.  The Indian Children's Program, thus, had no continuing legal entitlement to same, and "[t]he allocation of funds from a lump-sum appropriation is another administrative decision traditionally regarded as committed to agency discretion." *Id.* at 192.

Importantly, the Indian Health Service's termination of the Indian Children's Program was exempt from § 533 notice and comment rule making based on § 553(b)(A)'s exemption of "rules of agency rulemaking" from same. *Id.* at 197.  Here, per the intersection of GEPA and the APA, assessed at length in the court's memorandum opinion issued earlier this week, the Department's "agency priorities" vis-à-vis the Grant Programs (and Plaintiffs' members' Grant Awards) are squarely within the APA's notice and comment rule making requirement and, therefore, are not correctly categorized as items within "agency discretion" not subject to judicial review.

Outside of *Lincoln*, Defendants offer no substantive argument or authority to support their assertion that the Department's termination of the Grant Awards at issue here was "committed to agency discretion by law" within the meaning of 5 U.S.C. § 701(a)(2).  The court will not undertake a prolix analysis where virtually none has been offered by movants, especially as Defendants request a ruling within 24 hours of their emergency Motion.  The court is satisfied based upon the record before it that the APA's "basic presumption of judicial review" has been neither rebutted nor overcome.  *See Holbrook*, 48 F.4th at 287 and *Abbott Lab'ys*, 387 U.S. at 140.

IV. **CONCLUSION**

Accordingly, it is this 19th day of March 2025:

**ORDERED** that the Motion (ECF No. 36) shall be, and is hereby, **DENIED**.


/S/
_____
Julie R. Rubin
United States District Judge