IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **AMERICAN ASSOCIATION OF COLLEGES FOR TEACHER EDUCATION,** *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> **LINDA MCMAHON, in her official capacity as Secretary of Education,** *et al.*, <br><br> *Defendants*. | Civil No.: 1:25-cv-00702-JRR |

**MEMORANDUM OPINION AND ORDER**[1]

This matter comes before the court on Defendants Linda McMahon, in her official capacity as Secretary of Education, U.S. Department of Education, and Donald J. Trump's, in his official capacity as President of the United States, Motion to Stay and Suspend Injunction Pending Appeal. (ECF No. 44; the "Motion.") The court has reviewed all papers. No hearing is necessary. Local Rule 105.6 (D. Md. 2023).

**I.   BACKGROUND**

As discussed at length in its memorandum opinion issued March 17, 2025 (ECF No. 32), Plaintiffs AACTE, NCTR, and MACTE initiated this action on March 5, 2025, asserting two claims: violation of the Due Process Clause of the Fifth Amendment (Count I) and violation of the APA (Count II). (ECF No. 1.) Plaintiffs' claims arise from the Department's termination of grants awarded through the TQP, SEED, and TSL Grant Programs. Following briefing and a hearing on Plaintiffs' Motion for Temporary Restraining Order/Preliminary Injunction (ECF No. 5), the court granted in part and denied in part Plaintiffs' motion (construed, by agreement of the parties, as one

---

[1] All terms defined in the court's memorandum opinion at ECF No. 32 shall have the same meanings here.

for preliminary injunction only). (ECF Nos. 32, 33.) Specifically, the court held that Plaintiffs demonstrated a clear likelihood of success on their APA claim and issued a preliminary injunction that, *inter alia*, requires Defendants to reinstate TQP, SEED, and TSL Grant Awards of Plaintiff NCTR and Plaintiffs' members, and enjoins Defendants from terminating TQP, SEED, or TSL awards in a manner the court found likely violative of the APA. *Id.* Defendants are required to reinstate the aforementioned TQP, SEED, and TSL Grant Awards within five business days of the court's order. (ECF No. 33.)

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 62(c), a preliminary injunction is not stayed following a notice of appeal "[u]nless the court orders otherwise." FED. R. CIV. P. 62(c); *see also* FED. R. APP. 8(a)(1) (providing that "[a] party must ordinarily move first in the district court for . . . an order suspending . . . an injunction while an appeal is pending"). The Supreme Court has set forth four factors to consider in determining whether to stay the order of preliminary injunction pending Defendants' appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).[2]

The first two factors are "the most critical." *Nken v. Holder,* 556 U.S. 418, 434 (2009). The last two factors "merge when the Government is the opposing party." *Id.* at 435. Here,

---

[2] The *Hilton* factors are similar to the *Winter* factors a plaintiff bears on a motion for preliminary injunction. *See* ECF No. 32 at pp. 14–15; *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."); *Nken v. Holder,* 556 U.S. 418, 434 (2009) (observing that "[t]here is substantial overlap between" the factors governing issuance of a stay pending appeal and "the factors governing preliminary injunctions.").

because Defendants are the parties seeking a stay, they bear the burden to demonstrate the factors weigh in favor of a stay. *Dep't of Educ. v. Louisiana*, 603 U.S. 866, 868 (2024) (providing that "the burden is on the Government as applicant to show, among other things, a likelihood of success . . . and that the equities favor a stay").

### III.   ANALYSIS

  *A. Whether Defendants Make a Strong Showing They Are Likely to Succeed on Merits*

As set forth at length in the memoranda opinions on Plaintiffs' Motion for Preliminary Injunction and on Defendants' Emergency Motion for Reconsideration (ECF Nos. 32 and 42), Plaintiffs ably met their burden to demonstrate a clear showing of likelihood of success on the merits of their APA claim (Count II) in two primary ways:

> . . . Plaintiffs have made a clear showing of likelihood of success on the merits of their APA claim. Specifically, the court finds that the Department's Termination Letter, and the Department's termination of the Grant Recipients' Grant Awards are likely to be proven arbitrary and capricious, because the Department's action was unreasonable, not reasonably explained, based on factors Congress had not intended the Department to consider (*i.e.*, not agency priorities), and otherwise not in accordance with law. 16 5 U.S.C. § 706(2)(A); *Dep't of Commerce v. New York*, 588 U.S. 752, 773 (2019); *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021); *Sierra Club v. United States Dep't of the Interior*, 899 F.3d 260, 293 (4th Cir. 2018).

and

> . . . Plaintiffs . . . make a clear showing of likelihood of success on their APA claim because the Termination Letters fail to provide Grant Recipients any workable, sensible, or meaningful reason or basis for the termination of their awards. . . . The Department has not provided the "reasonable explanation" of its final agency action the APA requires. *Prometheus,* 592 U.S. at 423. The Termination Letter's list of ways in which a Grant Recipient's program is "inconsistent" with Department priorities is so broad and vague as to be limitless; devoid of import, even. Coupled with the disjunctive nature of the list (". . . or that otherwise fail to serve the best interests

3

> of the United States"), the Termination Letter effectively and practically renders meaningless the right to appeal, which, as described in the Termination Letter, requires a written appeal to be submitted within 30 days containing a "brief statement of your argument and the disputed factual, legal, or other issues." (ECF No. 1-2.) . . . . A reasonable explanation considers relevant data and articulates a satisfactory explanation for the agency's decision, "including a rational connection between the facts found and the choice made." *Dep't of Commerce*, 588 U.S. at 773 (quoting *State Farm*, 463 U.S. at 43). The Department has not provided a satisfactory explanation of the facts found or the choice made, much less a rational connection between the two. The Termination Letter fails to mention or refer to data or information the Department considered, if any, in deciding that the Grant Programs no longer effectuate Department priorities. Further, the Department's use of a template or boilerplate letter issued to all Grant Recipients further strengthens Plaintiffs' argument that the Department did not consider individual, or any, data or information. *California v. U.S. Dep't of Educ.*, — F. Supp. 3d — , No. CV 25-10548-MJJ, 2025 WL 760825, at *3 (D. Mass. Mar. 10, 2025) (finding the same Termination Letter "does not reach the level of a reasoned explanation; indeed it amounts to no explanation at all").

(ECF No. 32 at pp. 37–40.)

Defendants continue to ignore or misapprehend the court's analysis and resultant conclusion that, by application of GEPA, with two exceptions not relevant here, the APA's rulemaking carve-out for grant-related matters does not apply to the Department's asserted agency priorities on which it based its termination of the Grant Awards through its Termination Letter. The court did not find, as Defendants say, that "all priorities are identical in the regulations just because they include the word 'priorities.'" (ECF No. 44 at p. 3.) Defendants' watered-down misdescription of the court's reasoned discussion and findings regarding the interplay between the Grant Programs' authorizing statutes, Department regulations (within the Code of Federal Regulations) to implement those statutes, GEPA, and the APA, does not serve its aim to persuade the court that they are likely to succeed on appeal.

In the same vein, the court has never purported to cabin the Secretary's entitlement or ability to change her priorities regarding broader "policy objectives." (ECF No. 44 at p. 4.) Where such broader "policy objective" priorities are used as the premise to terminate Grant Awards, the court is (as it is here) tasked with redressing such termination if it runs afoul (as the court concluded it likely does here) of governing statutes and regulations. *See* 2 C.F.R. § 200.340(a)(4) (2025) ("The Federal award may be terminated in . . . its entirety . . . to the extent authorized by law, if an award no longer effectuates the . . . agency priorities."). Nothing in the court's order at ECF No. 33 prohibits, impairs, or limits Defendants' ability, right, or entitlement to terminate Plaintiffs' members' Grant Awards provided any such termination is not undertaken or effected in a manner the court determined is likely a violation of the APA.

In the Motion, Defendants assert the Grant Programs' authorizing statutes confer on the Secretary "significant discretion to allocate funds across grant applicants to best advance the purposes of the programs" and "[n]othing about those statutory discretions constrains the Secretary's discretion to determine how best to allocate funding for each program among many different potential grant recipients." (ECF No. 44 at pp. 5–6.) Defendants' argument that the Grant Programs' authorizing statutes commit allocating Grant Awards to the Secretary's discretion ignores not only GEPA, but also the undisputed fact that the Department uses notice and comment rulemaking to set priorities for selecting Grant Recipients. *See, e.g.* ECF No. 24 at p. 26. Defendants seem to argue that the authorizing statutes confer different levels of discretion for awarding funds and for terminating them, the former subject to the APA and the latter exempt from same. Defendants identify no authority to support this contradiction; and it does not pass muster. Further, as the court previously explained, Defendants' reliance on *Lincoln v. Vigil*, 508 U.S. 182 (1993), is unpersuasive as *Lincoln* is materially distinguishable from this case.

5

Regarding Defendants' assertion that Plaintiffs' Complaint is essentially a contract dispute, the court incorporates its discussion of the non-application of the Tucker Act from its order of two days ago. (ECF No. 42 at pp. 4–11.) It bears more than a passing mention that, at the hearing on the preliminary injunction, Defendants' counsel asserted her clients' position as follows: "We believe this is a straightforward – I don't know if anything is straightforward in this administration, but it's a straightforward APA case," and "we have a final agency action, and now the question is was that action arbitrary and capricious . . . . It's an APA case." (Preliminary Injunction Hearing Tr. 58:23–25, 54:15–17.) The court agreed then and agrees now. The essence of Plaintiffs' claim is the equitable relief sought; Plaintiffs ask this court to review the lawfulness of the Department's termination decision, a decision that will have an immediate and ongoing impact on the relationship between the parties, namely the Plaintiffs' and their members' Grant Award status. *See* ECF No. 42 at p. 6.

Further, the court was wholly unpersuaded by Defendants' Emergency Motion for Reconsideration (ECF No. 36) in which Defendants sought dismissal of the action on the basis of two arguments that the court lacks subject matter jurisdiction over this action. (ECF No. 42, Memorandum Opinion and Order on Defendants' Emergency Motion for Reconsideration.) Nothing Defendants present in the instant Motion, or elsewhere, gives the court pause as to its proper subject matter jurisdiction over this action or as to the correctness of its determination on the Motion for Preliminary Injunction, including the strength of Plaintiffs' *Winter* factors showing. Indeed, the court found that Plaintiffs plainly and without question met their burden on likelihood of success, as well as irreparable harm, the balance of equities, and public interest. (ECF No. 32 at pp. 42–45.) Therefore, Defendants do not meet their burden to persuade the court they are likely

to succeed on the merits of their appeal of the court's order at ECF No. 33 granting preliminary injunctive relief (or the court's denial of Defendants' Emergency Motion for Reconsideration).

  B. *Whether Defendants Will Be Irreparably Injured Absent a Stay*

  The preliminary injunction requires the Department (and others subject to the order) essentially to do what the court finds the law otherwise (already) requires of it and to return the parties to their respective status immediately prior to the likely unlawful termination of the Grant Awards by the Department's Termination Letter. The injunction requires nothing of the Department (or any Defendant) that the Department had not already committed to do in accordance with its own regulations.

  Defendants' purported concerns over the Executive Branch's authority are not compelling; they mistake the point. Defendants, in essence, purport to tee up a separation of powers question. But, no. In fact, none exists. The court's order does not impair Defendants' exercise of lawful authority; and to the extent the Department wishes to terminate the Grant Awards, it may do so by lawful means as delineated by GEPA, the APA, and the Grant Award GANs.[3] The Executive Branch's authority does not carry with it the right to bypass statutory obligations set by Congress. For all such reasons, the court discerns no irreparable injury to Defendants absent a stay pending appeal.

---

[3] For the same reasons, this court's order does not, as a matter of fact or law, impair the Department or the Secretary's compliance with President Trump's newest Executive Order titled *Improving Education Outcomes by Empowering Parents, States, and Communities* (available online at https://perma.cc/22QL-8HVT) (last accessed March 21, 2025). President Trump's Executive Order requires that any action undertaken in compliance with, or to give life to, its stated *Purpose and Policy* (Section 1) be done "to the maximum extent appropriate and permitted by law," and "[c]onsistent with the Department of Education's authorities;" and the President mandates that "this order shall be implemented consistent with applicable law." Nothing about, or within, the Executive Order (expressly or by implication) conflicts with, directs, encourages, or supports non-compliance with the court's order at ECF No. 33.

    C.  *Whether a Stay Will Substantially Injure Plaintiffs and Public Interest*

As the court recognized above, these factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Entry of a stay will produce immediate, irreparable harm to Plaintiffs in precisely the ways the court identified in its memorandum opinion at ECF No. 33, because, here, a stay is the functional equivalent of denial of preliminary injunctive relief, which the court found is necessary to avoid certain doom for Grant Recipient programs, and resultant/related harms to their affiliated teachers and administrators, and the communities they serve.

Until this point, Defendants expressly conceded (in their papers and at oral argument) that Plaintiffs would experience irreparable harm in the absence of a preliminary injunction. They now appear to retract that concession, arguing that "there is little to no evidence in the record regarding how many months it would take before Plaintiffs begin to feel the impact of the lack of funding." (ECF No. 44 at p. 7.) Apart from their inappropriate effort to generate a dispute on this point for the first time in their Motion to stay the court's order, Defendants' position ignores the numerous undisputed attestations Plaintiffs offered in support of their preliminary injunction motion that detail the many concrete harms their members will experience from the loss of their Grant Award funding. *See, e.g.*, NCTR Decl., ECF No. 5-4 ¶¶ 14–15; AU Decl., ECF No. 5-6 ¶ 13; UST Decl., ECF No. 5-7 ¶¶ 13–14; Alder GSE Decl., ECF No. 5-8 ¶ 13; Teaching Lab Decl., ECF No. 5-9 ¶ 19.

Moreover, Defendants' present assertion is undermined by their own subsequent assertion (also in the Motion) that Plaintiffs' members use their Grant Award funding for "purposes like salaries and living wage stipends," and they "would likely begin withdrawing immediately upon grant reinstatement." (ECF No. 44 at p. 7.) Defendants' concession on irreparable harm just days

8

ago; followed by their current retraction of the concession; followed by, in the same breath, an assertion that undermines their retraction exposes the untenable nature of their argument.

Further, as set forth at pages 44 and 45 of the court's memorandum opinion at ECF No. 32:

> The harms Plaintiffs identify also implicate grave effect on the public: fewer teachers for students in high-need neighborhoods, early childhood education, and special education programs. (AU Decl., ECF No. 5-6 ¶ 13; UST Decl., ECF No. 5-7 ¶¶ 6, 14–15.) Moreover, even to the extent Defendants assert such an interest in ending DEI-based programs, they have sought to effect change by means the court finds likely violate the law. "[T]he public 'undoubtedly has an interest in seeing its governmental institutions follow the law.'" *Vitkus v. Blinken*, 79 F.4th 352, 368 (4th Cir. 2023) (quoting *Roe*, 947 F.3d at 230–31).

The court reiterates that here.

For the same reasons discussed at length in the court's memorandum opinion at ECF No. 32, Defendants' arguments fail to persuade the court that the risk of substantial injury to Plaintiffs and the public interest favor a stay pending appeal.

D. Bond

Defendants also assert that the court's imposition of a nominal bond was error. (ECF No. 44 at p. 8.) As the court has previously addressed, at the hearing, defense counsel did not oppose Plaintiffs' request that the court require no bond. Then, Defendants retracted that concession too – by later filing a notice advising of their change of position and requesting bond in an amount "equal to the Federal Government's potential costs and damages from a wrongly issued injunction," per President Trump's March 11, 2025, Executive Order titled "Ensuring the Enforcement of Federal Rule of Civil Procedure 65(c)." (ECF Nos. 30, 30-1.) The court examined the issue as it is required to do, and determined that a nominal bond was warranted here based on the cited authorities – authorities Defendants do not address in their Motion. The court is not persuaded that the court's issuance of a nominal bond was error, and Defendants offer no

substantive legal argument for the court to change its mind now. This similarly does not favor entry of a stay pending appeal.

## IV. <u>CONCLUSION</u>

Accordingly, it is this 21st day of March 2025:

**ORDERED** that the Motion (ECF No. 44) shall be, and is hereby, **DENIED**.

/S/

---

Julie R. Rubin
United States District Judge